WEBSTER COUNTY COAL CORPORA-
TION, a corporation, Plaintiff,

v.

TENNESSEE VALLEY AUTHORITY
and Louisville & Nashville Railroad
Company, Defendants.

Civ. A. No. 79–0015–0(G).

United States District Court,
W. D. Kentucky,
Owensboro Division.

April 17, 1979.

---

**530**

Ralph W. Wible, Holbrook, Gary, Wible & Sullivan, Owensboro, Ky., James G. Park, Thomas L. VanKirk, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for plaintiff.

Herbert S. Sanger, Jr., General Counsel, James E. Fox, Asst. General Counsel, Michael McElroy and Edwin W. Small, Tennessee Valley Authority, Knoxville, Tenn. for defendant Tennessee Valley Authority.

Fred R. Birkholz, Louisville & Nashville Railroad Company, Louisville, Ky., Clarence McCarroll, Bartlett, McCarroll & Nunley, Owensboro, Ky., for defendant for Louisville & Nashville Railroad Co.

## MEMORANDUM OPINION

JAMES F. GORDON, Senior District Judge.

On February 26, 1979, the plaintiff, Webster County Coal Corporation, filed a civil suit against the defendants, Tennessee Valley Authority (hereinafter TVA) and the Louisville & Nashville Railroad Company (hereinafter L&N). In the complaint, it is alleged that the defendants entered into a "contract, agreement, combination and conspiracy" in violation of the federal antitrust laws to limit the number of railroad cars available for the transportation of coal from the plaintiff's Dotiki Mine to the defendant TVA. The alleged purpose of this conspiracy was to enable TVA to avoid its contractual obligations to purchase coal from the plaintiff under a coal sales agreement entered into between the plaintiff and TVA in August of 1974. The plaintiff also claims that the defendants are liable to it for tortious interference with the contract rights of the plaintiff, that TVA is separately liable for breaching the terms of the coal sales agreement, and that the L&N is liable for breaching its duty of providing adequate rail service under both federal and state law. The plaintiff prays to receive damages and injunctive relief and filed along with the complaint a motion for a preliminary injunction to attempt to enjoin the defendants from continuing with the alleged illegal actions pending a final hearing and determination of this action.

In response, L&N has made a motion to be dismissed from this action claiming that the primary jurisdiction of the matters complained of lies with the Interstate Commerce Commission (hereinafter ICC), or, in

the alternative, that this Court abate the action until the plaintiff shall have filed a complaint with the ICC and a final determination of this matter be made by this agency. The TVA has made a motion to be dismissed from this action, claiming that the complaint fails to state a claim against it upon which relief can be granted. In the alternative, TVA moved to refer the issues raised in Counts III and IV of the complaint to be referred to arbitration in accordance with the coal sales agreement and that all proceedings in this action be stayed pending arbitration of those issues.

The Court will determine the various issues raised in the briefs of counsel separately.

## I. IS TVA EXEMPT FROM LIABILITY UNDER THE ANTITRUST LAWS?

■ One of the most important considerations of this case is whether the defendant TVA can be sued for violating the federal antitrust laws pursuant to 15 U.S.C.A. § 15 (1973). In its complaint, the plaintiff asserts that TVA's actions violated Sections 1 and 2 of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7 (1973 & Supp.1978). These sections apply to the actions of "persons", which is defined to "include corporations and associations existing under or authorized by the laws of either the United States, the laws of any Territories, the laws of any State, or the laws of any foreign country", 15 U.S.C.A. §§ 7, 12 (1974 & Supp.1978). In 16 U.S.C.A. § 831 (1974), the TVA is described as being a "body corporate", and in 16 U.S.C.A. § 831c (1974), the agency is granted several corporate powers, among them the ability to sue and be sued. The plaintiff asserts that TVA as a corporation is a "person" under the meaning of the antitrust laws and so is subject to being sued under them. To support this assertion, the plaintiff cites the case of *United States v. General Elec. Co.*, 209 F.Supp. 197 (E.D.Pa.1962) in which it was held that the TVA was a "person" within the meaning of the antitrust laws and was entitled to bring an action for treble damages. The plaintiff reasons that if the TVA is a person for the

purpose of suing under these laws, then it should also be considered a person for the purpose of being sued.

The plaintiff also refers this Court to the recent Supreme Court decision of *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), in which it was held that municipalities could be sued under the antitrust statutes. This case involved a question of whether the doctrine of state immunity from antitrust laws could be extended to protect municipalities, *see, Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572; *reh. denied*, 423 U.S. 886, 96 S.Ct. 162, 46 L.Ed.2d 118 (1975); *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943); *Georgia v. Evans*, 316 U.S. 159, 62 S.Ct. 972, 86 L.Ed. 1346 (1942); *Chattanooga Foundry & Pipe Works v. Atlanta*, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906), and not with the immunity of a federal agency, which is the question in this case. However, the plaintiff cites the basic reasoning of *Lafayette, supra*, to support the notion that such liability should be extended to cover the TVA.

The TVA argues that it is an agency and instrumentality of the federal government, *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 315, 56 S.Ct. 466, 80 L.Ed. 688 (1936); *Tennessee Elec. Power Co. v. Tennessee Valley Auth.*, 306 U.S. 118, 134, 59 S.Ct. 366, 83 L.Ed. 543 (1939); *Tennessee Valley Auth. v. Kinzer*, 142 F.2d 833, 837 (6th Cir. 1944); *Tennessee Valley Auth. v. Mason Coal, Inc.*, 384 F.Supp. 1107, 1115 (E.D.Tenn.1974); *aff'd*, 513 F.2d 632 (6th Cir. 1975); *Malone v. Tennessee Valley Auth.*, 86 F.Supp. 961 (W.D.Ky.1949); 16 U.S.C.A. § 831r (1974); and that its actions were valid government actions and therefore exempt from antitrust liability. *See, United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United States v. Rock Royal Co-op, Inc.*, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939); *Alabama Power Co. v. Alabama Elec. Co-*

*op., Inc.*, 394 F.2d 672 (5th Cir.), *cert. denied*, 393 U.S. 1000, 89 S.Ct. 488, 21 L.Ed.2d 465 (1968).

The TVA also argues that the antitrust laws are not expressly applicable to the federal government and so it along with its instrumentalities and agencies are protected from such action according to the rule of construction which holds that a "general statute imposing restrictions does not impose them upon the Government itself without a clear expression or implication to that effect." *United States v. Wittek*, 337 U.S. 346, 358–59, 69 S.Ct. 1108, 1114–1115, 93 L.Ed. 1406 (1949); *accord, United States v. United Mine Workers*, 330 U.S. 258, 272–73, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Grand River Dam Auth. v. Federal Power Comm'n*, 246 F.2d 453, 455 (10th Cir. 1957).

The TVA also states that just because it has the ability to sue for treble damages under the antitrust laws does not make it liable under these laws. The ability to sue and not to be held liable is had by state governments. *See, Georgia, supra; Parker, supra* ; and by foreign governments for the most part. *See, Pfizer, Inc. v. India*, 434 U.S. 308, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978); *American Banana Co. v. United Fruit Co.*, 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909). TVA argues that its status as a government agency and instrumentality gives it a similar position.

Furthermore, the TVA states that its grant of the corporate power to sue and be sued under 16 U.S.C.A. § 831c(b) (1974) does not make it liable under the antitrust laws. As was stated in *Atchley v. Tennessee Valley Auth.*, 69 F.Supp. 952, 954 (N.D.Ala.), "[t]he sue-and-be-sued clause in the TVA Act does nothing but remove the procedural bar to suit against an agency of the Federal Government. It does not engender liability in a case where liability would not otherwise exist." TVA argues that this case is like *Atchley* in that it is one where the substantive law prohibits imposition of liability.

After reading the briefs of counsel, this Court finds that it must decide this issue of liability in favor of the TVA, and holds that

it, as an agency and instrumentality of the federal government, is exempt from liability under the antitrust laws. *Lafayette, supra*, is indicative of growing antitrust liability on the parts of municipalities, but this Court thinks that it is not controlling on the issue of the liability of federal agencies. Accordingly, this Court finds that the TVA cannot be held liable to the plaintiff under Counts I and II of its complaint.

## II. ARE THE PLAINTIFF'S CLAIMS AGAINST TVA SUBJECT TO ARBITRATION?

■ The TVA asserts that the plaintiff's claims must be arbitrated pursuant to Article XIII of their August, 1974 coal sales agreement. Article XIII provides that

[a]ny controversy, claim, counterclaim, defense, dispute, difference or misunderstanding arising out of or in relation to this Contract, or the breach thereof, which the parties are unable to settle by agreement shall be settled by arbitration before a board of three (3) arbitrators one of whom shall be named by Buyer, one of whom shall be named by Contractor and the third of whom shall be named by the two arbitrators appointed by Buyer and Contractor respectively. None of the three (3) arbitrators shall be employees of Buyer, Contractor or Agent.

The plaintiff claims that this Court rather than the arbitrators have jurisdiction over this dispute since arbitrators have no jurisdiction to pass upon antitrust claims. This Court does not contest the proposition that issues involving antitrust claims are not the subject of arbitration. *See, Helfenbein v. International Indus. Inc.*, 438 F.2d 1068 (8th Cir. 1971), *cert. denied*, 404 U.S. 872, 92 S.Ct. 63, 30 L.Ed.2d 115 (1971); *American Safety Equip. Corp. v. J. P. Maguire & Co.*, 391 F.2d 821 (2d Cir. 1968). Nor does it contest the principle that when antitrust issues permeate an entire case, a district court should proceed with the litigation and deny or defer any issues which may be submitted to arbitration. *Applied Digital Tech., Inc. v. Continental Gas Co.*, 576 F.2d 116 (7th Cir. 1978). However, as this Court

just stated, the TVA cannot be sued under the antitrust laws, and the charges in those complaints alleging their liability under these laws have to be dismissed. Without the ability to sue under these laws, it seems that the plaintiff's only claim against the TVA would be for violating the 1974 coal sales agreement, and Counts III and IV of their complaint allege such violations. Such violations come under the Article XIII arbitration clause. Therefore, this Court orders that all proceedings in this action dealing with the alleged violations of TVA concerning the August, 1974 coal sales agreement with the plaintiff be referred to arbitration pursuant to Article XIII. *See, Georgia Power Co. v. Cimarron Coal Corp.*, 526 F.2d 101, 106 (6th Cir. 1975); *cert. denied*, 425 U.S. 952, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976); *Tennessee Valley Auth. v. Webster Co. Coal Corp.*, Civil Action No. 76–0081–0 (Orders dated October 4, 1976, and November 10, 1976); 9 U.S.C.A. § 3 (1970). However, this Court will retain jurisdiction over this matter and abates these issues only for the purposes of enforcing any arbitrated award, if necessary.

## III. ARE THE PLAINTIFF'S CLAIMS AGAINST L&N WITHIN THE PRIMARY JURISDICTION OF THE ICC?

In Count I paragraph 13 of the plaintiff's complaint, it is alleged that on or prior to August 1, 1978, and continuing to date, TVA and L&N entered into a contract, agreement, combination and conspiracy to limit artificially the number of railroad cars available to plaintiff at the Dotiki Mine, which agreement and conspiracy had the effect of reducing the numbers of cars that L&N would make available at plaintiff's Dotiki Mine.

The plaintiff claims that this was in violation of the federal antitrust laws and requested that this Court initially grant a preliminary or permanent injunction against these parties from continuing with this alleged conspiracy. In Count III, the plaintiff alleges that these actions resulted in the tortious interference with the plaintiff's contract rights under the August, 1974 coal sales agreement by L&N, and

similar initial injunctive relief was requested. Also, in Count V of the complaint, the plaintiff alleges that the L&N breached its duty under both federal and state law to provide it adequate rail service. The issue before this Court is whether this Court or the Interstate Commerce Commission has the jurisdiction to first initially determine the validity of these claims against the defendant L&N.

An initial bar to the plaintiff seeking an injunction would appear to be found in Section 16 of the Clayton Act, found in 15 U.S.C.A. § 26 (Supp.1978), which provides the following:

Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: *Provided, That nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit in equity for injunctive relief against any common carrier subject to the provisions of the Act to regulate commerce, approved February fourth, eighteen hundred and eighty-seven, in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission.* In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff. (emphasis added).

No one argues that the L&N is not under the regulation and supervision of the ICC,

so it would appear from the face of this statute that only the United States, and not a private party like the plaintiff, could bring suit for injunctive relief against L&N.

The plaintiff alleges that this statute does not prevent it from seeking an injunctive relief, and cites *Georgia v. Pennsylvania R. R. Co.*, 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051 (1945) to support their claim. In that case, the State of Georgia brought a suit in the Supreme Court of the United States against some twenty railroad companies alleging that the defendants had fixed arbitrary and noncompetitive rates and charges for transportation of freight by railroad to and from Georgia so as to prefer the ports of other states over the ports of Georgia. The complaint prayed for damages as well as an injunction to enjoin the alleged illegal conduct. There, as in this case, a question arose whether section 16 of the Clayton Act prevented the plaintiff from getting this injunction against the defendant railroads. Justice Douglas, in writing the majority opinion, held that this section did not prevent this.

The relief which Georgia seeks is not a matter subject to the jurisdiction of the Commission. Georgia in this proceeding is not seeking an injunction against the continuance of any tariff; nor does she seek to have any tariff provision cancelled. She merely asks that the alleged rate-fixing combination and conspiracy among the defendant-carriers be enjoined. As we shall see, that is a matter over which the Commission has no jurisdiction. And an injunction designed to put an end to the conspiracy need not enjoin operation under established rates as would have been the case had an injunction issued in *Central Transfer Co. v. Terminal R. Assn., supra* [288 U.S. 469, 53 S.Ct. 444, 77 L.Ed. 899].

These carriers are subject to the anti-trust laws. *United States v. Southern Pacific Co.*, 259 U.S. 214 [42 S.Ct. 496, 66 L.Ed. 907]. Conspiracies among carriers to fix rates were included in the broad sweep of the Sherman Act. *United States v. Trans-Missouri Freight Assn.*, 166 U.S. 290 [17 S.Ct. 540, 41 L.Ed. 1007]; *United States v. Joint Traffic Assn.*, 171 U.S. 505 [19 S.Ct. 25, 43 L.Ed. 259]. Congress by § 11 of the Clayton Act entrusted the Commission with authority to enforce compliance with certain of its provisions "where applicable to common carriers" under the Commission's jurisdiction. It has the power to lift the ban of the anti-trust laws in favor of carriers who merge or consolidate (*New York Central Securities Corp. v. United States*, 287 U.S. 12, 25, 26 [53 S.Ct. 45, 48, 49, 77 L.Ed. 138]) and the duty to give weight to the anti-trust policy of the nation before approving mergers and consolidations. *McLean Trucking Co. v. United States*, 321 U.S. 67 [64 S.Ct. 370, 88 L.Ed. 544]. But Congress has not given the Commission comparable authority to remove rate-fixing combinations from the prohibitions contained in the anti-trust laws. It has not placed these combinations under the control and supervision of the Commission. Nor has it empowered the Commission to proceed against such combinations and through cease and desist orders or otherwise to put an end to their activities. Regulated industries are not *per se* exempt from the Sherman Act. *United States v. Borden Co.*, 308 U.S. 188, 198 et seq. [60 S.Ct. 182, 188 *et seq.*, 84 L.Ed. 181]. It is true that the Commission's regulation of carriers has greatly expanded since the Sherman Act. See *Arizona Grocery Co. v. Atchison, T. & S. F. R. Co.*, 284 U.S. 370, 385, 386 [52 S.Ct. 183, 184, 185, 76 L.Ed. 348]. But it is elementary that repeals by implication are not favored. Only a clear repugnancy between the old law and the new results in the former giving way and then only *pro tanto* to the extent of the repugnancy. *United States v. Borden, supra* [308 U.S.] at pages 198, 199 [60 S.Ct. at pages 188–189, 84 L.Ed. 181]. None of the powers acquired by the Commission since the enactment of the Sherman Act relates to the regulation of rate-fixing combinations. Twice Congress has been tendered proposals to legalize rate-fixing

combinations. But it has not adopted them. In view of this history we can only conclude that they have no immunity from the anti-trust laws.

*Id.* at 455–57, 65 S.Ct. at 725–726. This Court thinks that the reasoning found in the *Pennsylvania R. R.* case is also applicable to this case. This Court cannot characterize the complaint as the L&N would have it do—that the complaint alleging violations of the antitrust laws is in reality a complaint for discrimination in the matter of car supply for coal unit train service and not for antitrust violations, and so should be considered a matter within the primary jurisdiction of the ICC. In short, this Court finds that the plaintiff's request for injunctive relief is now properly before the Court, and that the plaintiff may proceed against L&N under 15 U.S.C.A. § 15 (1973).

As to the allegations found in Count III of the complaint, this Court finds that these too are now properly before the Court. This separate cause of action arises from the same alleged "conspiracy" as found in Count I, and the same relief for damages as well as for preliminary and permanent injunction are called for. Furthermore, the L&N does not allege that the issue of whether its actions tortiously interfered with the contract rights is a matter within the primary jurisdiction of the ICC.

■ However, as to the allegations found in Count V of the complaint concerning whether the L&N breached its duty to provide adequate rail service to the plaintiff, even the plaintiff admits that this could come under the primary jurisdiction of the ICC. This Court concludes that it is within that jurisdiction. See, *Elgin Coal Co. v. Louisville & Nashville R. R. Co.,* 411 F.2d 1043, 1045 (6th Cir. 1969); *Crain v. Blue Grass Stockyards Co.,* 399 F.2d 868, 872–73 (6th Cir. 1968); *Spence v. Baltimore & Ohio R. R. Co.,* 360 F.2d 887, 890 (7th Cir.); *cert. denied,* 385 U.S. 946, 87 S.Ct. 318, 17 L.Ed.2d 225 (1966). Therefore, the Court dismisses this Count from the complaint.

In summary, this Court makes the following determinations:

1. That both Counts I and II involving the alleged antitrust violations of TVA be dismissed because the TVA as an agency and instrumentality of the federal government is exempt from antitrust liability under 15 U.S.C.A. § 15 (1973).

2. That the allegations made against TVA found in Counts III and IV of the complaint are hereby ordered referred to arbitration pursuant to Article XIII of the 1974 coal sales agreement between the plaintiff and TVA. This Court retains jurisdiction and abates those issues only for purposes of enforcing any arbitrated award, if necessary.

3. That the allegations found in Counts I and III made against the L&N and for which the plaintiff seeks a preliminary injunction are properly before this Court, and the plaintiff may proceed against the L&N for alleged antitrust violations. However, this Court denies the plaintiff's motion for this relief for the present, and will consider granting an injunction only after the case has been tried before this Court on the merits.

4. That the allegations found in Count V of the complaint concerning whether the L&N breached its duty to provide adequate rail service to the plaintiff is an issue within the primary jurisdiction of the ICC, and, accordingly, this Count is dismissed.