**SEA–LAND SERVICE, INC., et al., Appellants,**

v.

**The ALASKA RAILROAD, et al.**

**No. 80–2097.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 21, 1981.

Decided July 27, 1981.

J. Peter Shapiro, Seattle, Wash., with whom Peter D. Byrnes, Seattle, Wash., and Anne E. Mickey, Washington, D. C., were on the brief, for appellants.

John D. Bates, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Royce C. Lamberth and Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., were on the brief, for federal appellees.

Michael Joseph, Washington, D. C., entered an appearance for Crowley Maritime Corp., et al., appellees.

Before WRIGHT, MacKINNON and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

■ This appeal presents the question whether the Alaska Railroad (ARR), an entity wholly owned and operated by the United States, is amenable to suit for treble damages and injunctive relief under the Sherman Act for alleged anticompetitive conduct. Appellants Sea-Land Services, Inc., and its wholly owned subsidiary, Sea-Land Freight Services, Inc., assert that ARR and a private corporation, Alaska Hydro-Train Corp., are engaged in a conspiracy to drive out competition and monopolize the Alaska trade. On the ground of sovereign immunity, the district court dismissed the action as to ARR and the United States agencies and officials responsible for ARR's supervision.[1] We affirm the district court's order dismissing the case against these defendants, although our analysis differs in part from that of the district judge.

Insofar as appellants seek equitable relief, we conclude that sovereign immunity does not bar the way. See 5 U.S.C. § 702, *as amended by* Pub.L.No. 94–574, 90 Stat. 2721 (1976) (eliminating sovereign immunity defense in all actions for specific, nonmonetary relief against a United States agency or officer acting in an official capacity). However, we further conclude that Congress did not place the United States or its instrumentalities under the governance of the Sherman Act. For that reason, we hold that appellants may not maintain this action against the Alaska Railroad and the United States agencies and officers that supervise its operation.

I

The district court stated tersely that § 702 of the Administrative Procedure Act "does not afford [appellants] a statutory cause of action" in this case. *Sea-Land Service Inc. v. Alaska Railroad*, 1980–2 Trade Cas. ¶ 63,481, at 76,523–24 (D.D.C. 1980). That statement bears elaboration. Section 702 of the Administrative Proce-

dure Act, *as amended by* Pub.L.No. 94–574 (1976), provides in pertinent part:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States .... Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; ....

The Judiciary Committees of both Houses, in their reports on the 1976 amendment, identified as the measure's clear purpose "elimina[tion of] the sovereign immunity defense in *all* equitable actions for specific relief against a Federal agency or officer acting in an official capacity." S.Rep.No. 996, 94th Cong., 2d Sess. 8 (1976) (emphasis added); H.R.Rep.No.1656, 94th Cong., 2d Sess. 9 (1976), U.S.Code Cong. & Admin. News 1976, p. 6121, 6129 (emphasis added). The legislative history plainly reveals a congressional intent to strengthen Government accountability and dispel the confusion, uncertainty, and unfairness sovereign immunity defenses generated. See S.Rep.No.996 at 7; H.R.Rep.No.1656 at 8. While the amendment "with[drew] the defense of sovereign immunity in actions seeking relief other than money damages," Congress intended no alteration in existing law governing the recovery of money damages against the United States. S.Rep.No.996 at 4; H.R. Rep.No.1656 at 4–5, U.S.Code Cong. & Admin.News 1976, p. 6124. Were sovereign immunity our sole concern, therefore, to the extent that appellants seek injunctive relief, we would hold the named United States agencies and officials answerable in this action.

Although amended § 702 eliminates the defense of sovereign immunity in actions

---

1. The district court further ordered a dismissal without prejudice as to the private defendants, *Alaska Hydro-Train* and *its parent corporation*. The court found that, under the doctrine of primary jurisdiction, the core of that dispute should be pursued, initially, before the Interstate Commerce Commission. That ruling is not before us for review.

for specific, nonmonetary relief,[2] the amendment does not mean that all such actions, in which a sovereign immunity defense formerly would have required dismissal, now will be decided on the merits. By its terms, amended § 702 does not affect "the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground." We hold that such a ground bars this action. The Sherman Act, we conclude, does not expose United States instrumentalities to liability, whether legal or equitable in character, for conduct alleged to violate antitrust constraints.

## II

Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, which appellants allege have been violated by the Alaska Railroad and its supervising United States agencies and officials, prohibit contracts, combinations, or conspiracies in restraint of trade or commerce and monopolization or attempts or conspiracies to monopolize trade or commerce by any "persons." The word "person" or "persons" is defined for purposes of the Sherman Act in 15 U.S.C. § 7 to include corporations and associations existing under or authorized by state or federal law. In *United States v. Cooper Corp.*, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941), the Supreme Court held. that the United States does not qualify as a "person" within the compass of the statutory provision (now 15 U.S.C. § 15) authorizing an injured "person" to maintain an action for treble damages against an alleged violator of the antitrust laws. The Court pointed out that if the United States qualified as a "person" entitled to maintain a treble damage action, it would also qualify as a "person" subject to Sherman Act liability. *Id.* at 606, 61 S.Ct. at 744.

Congress ultimately responded to the precise question raised in *Cooper Corp.* In 1955, § 4A was added to the Clayton Act[3] authorizing the United States to sue alleged antitrust law violators for actual, but not treble, damages. Although Congress was well aware of the view the Court indicated in *Cooper Corp.*, that Congress had not described the United States as a "person" for Sherman Act purposes,[4] Congress addressed only the direct holding in that case—the ruling that the United States was not authorized to proceed as a Sherman Act treble damage action plaintiff. The 1955 alteration simply added an action for single damages to the Government's potent antitrust enforcement arsenal, which already included criminal prosecutions under §§ 1–3 of the Sherman Act, 15 U.S.C. §§ 1–3, proceedings for injunctive relief under § 4, 15 U.S.C. § 4, and seizure of property under § 6, 15 U.S.C. § 6.

2. *Jaffee v. United States*, 592 F.2d 712, 718–19 (3d Cir.), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), relying on the relevant legislative history, firmly rejects in an illuminating discussion the narrow interpretation of the 1976 amendment to § 702 that the Government appears to urge upon us in this action. *See* Brief for Appellees at 27–28. *See also Sheehan v. Army and Air Force Exchange Service*, 619 F.2d 1132, 1139 (5th Cir. 1980) (following *Jaffee*). *But see Estate of Watson v. Blumenthal*, 586 F.2d 925, 932–34 (2d Cir. 1978) (alternative holding).

3. 15 U.S.C. § 15a, Pub.L.No. 84–137, 69 Stat. 282 (1955).

4. *See, e. g.*, 101 Cong.Rec. 5129 (1955) (Remarks of Rep. Celler) ("[T]he United States is deemed not a person and thus cannot sue. The word person is the key word in the statute. Only a 'person' presently can sue.").

Appellants suggest that *Georgia v. Evans*, 316 U.S. 159, 62 S.Ct. 972, 86 L.Ed. 1346 (1942), and *Pfizer, Inc. v. Government of India*, 434 U.S. 308, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978), confine the significance of *Cooper Corp.* to the precise holding that the United States cannot sue for treble damages. We believe that the legislative history of the 1955 alteration confirms the congressional understanding that *Cooper Corp.* implied a broader position—that Congress had not identified the United States as a "person" capable of maintaining a Sherman Act treble damage action, or as a "person" amenable to suit under the Act. *Cf. State of New Mexico v. American Petrofina, Inc.*, 501 F.2d 363 (9th Cir. 1974) (states, acting in their sovereign character, although they may maintain antitrust actions, are invulnerable to federal antitrust liability). *Accord, Feldman v. Gardner*, 661 F.2d 1295 (D.C. Cir. 1981).

Appellants stress the broad policy of the Sherman Act and ask us to develop from that policy coverage of the United States and its instrumentalities as defendants. Given the discrete consideration Congress gave to the situation of the United States, after the decision in *Cooper Corp.*, as a Sherman Act damage action plaintiff, and the legislature's total silence on the situation of the United States as a Sherman Act defendant, we decline to take the step appellants invite. The *Cooper Corp.* Court apparently assumed the United States was not exposed to liability under the Sherman Act, subsequent case law is consistent with that view,[5] Congress had a clear occasion to address the issue in 1955 but failed to do so. Under these circumstances, we are unwilling "to engraft on [the] statute additions . . . the legislature might or should have made." *Cooper Corp., supra,* 312 U.S. at 605, 61 S.Ct. at 744. *Cf. Texas Industries, Inc. v. Radcliff Materials, Inc.,* —— U.S. ——, 101 S.Ct. 2061, 2070, 68 L.Ed.2d 500 (1981) (issue of right to contribution among antitrust defendants "is a matter for Congress, not the courts, to resolve"). Accordingly, we hold that the United States, its agencies and officials, remain outside the reach of the Sherman Act.

*Hecht v. Pro-Football, Inc.,* 444 F.2d 931 (D.C.Cir. 1971), on which appellants primarily rely, involved an instrumentality of the District of Columbia, the District of Columbia Armory Board, an entity more closely resembling a municipal agency than a United States instrumentality. Pursuant to its authority to legislate for the District, Congress provided for the construction of the Robert F. Kennedy Stadium and created the Armory Board to operate the facility. *Hecht* presented a challenge under the antitrust laws to a provision in the Board's thirty-year lease of the stadium to the Washington Redskins. The provision alleged to contravene the Sherman Act precluded rental of the stadium during the term of the Redskins' lease to any other professional football team. In holding that the lease was subject to the same antitrust constraints as those applied to contracts between private parties, this court focused on prior decisions involving governmental action by a state or municipal entity. *Id.* at 936-42.[6]

In contrast to the Supreme Court's ruling in *Cooper Corp., supra,* that the United States is not a "person" authorized by Congress to maintain a treble damage action under the Sherman Act, the Court ruled the very next year that states could sue for treble damages under the Act. *Georgia v. Evans,* 316 U.S. 159, 62 S.Ct. 972, 86 L.Ed. 1346 (1942). *See also Chattanooga Foundry & Pipe Works v. Atlanta,* 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906) (local government entity may maintain Sherman Act treble damage action). The Court did not suggest in those decisions, as it did with respect to the United States in *Cooper Corp.,* 312 U.S. at 606, 61 S.Ct. at 744, that states or municipalities stand wholly outside the reach of the Sherman Act with respect to conduct in disregard of antitrust restraints. *Cf. City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978) (cities are subject to antitrust liability). We believe District of Columbia instrumentalities functionally similar to local authorities are properly ranked with other municipal entities in this context. *See Sabin v. Berglund,* 585 F.2d 955, 960 (10th Cir. 1978); *cf. District of Columbia v. Woodbury,* 136 U.S. 450, 10 S.Ct. 990, 34 L.Ed. 472 (1890) (District of Columbia agencies treated as municipal instrumentalities for tort liability purposes). While *Hecht* stands as this court's precedent regarding District of Columbia agen-

---

5. *See, e. g., Champaign-Urbana News Agency, Inc. v. J. L. Cummins News Co.,* 632 F.2d 680 (7th Cir. 1980) (Robinson-Patman Act held inapplicable to purchases by military exchanges); *Webster County Coal Corp. v. TVA,* 476 F.Supp. 529 (W.D.Ky.1980) (TVA, as instrumentality of federal government, is exempt from liability under the antitrust laws).

Except for *Hecht v. Pro-Football, Inc.,* 444 F.2d 931 (D.C.Cir. 1971), discussed *infra,* appellants cite no cases suggesting that federal agencies are subject to antitrust liability.

6. The court also considered decisions involving alleged exemption of federally regulated private industries from antitrust laws. *Id.* at 942-44.

cies such as the Armory Board, we hold that *Hecht* does not supply analysis appropriate in a case in which the activities of a United States instrumentality are at issue.

---

Appellants urge that it is anomalous and unfair for a United States instrumentality to escape the regimen of antitrust laws the Government would compel its rivals in commerce to obey. Reply Brief at 2, 13. As appellants acknowledge, however, redress for their alleged grievance entails a policy judgment. We believe a court should not infer such a judgment from the silence of Congress. Congress spoke directly and with precision to the institution of suit by the United States under the Sherman Act. Similarly clear statement subjecting the United States to a private action for violation of the Sherman Act should precede court application of the principle appellants press, that United States entities operating alongside private companies "should be required to abide by the same laws regulating commerce as everyone else." *Id.* at 2.

For the foregoing reasons, we affirm the order of the district court granting the motion of the Alaska Railroad and the United States agencies and officials named in the complaint to dismiss with prejudice the claims asserted against them.

*Affirmed.*