**SEA AIR SHUTTLE CORPORATION d/b/a VISS, and Sea Air Shuttle Corporation of the Virgin Islands, Plaintiffs,**

v.

**The VIRGIN ISLANDS PORT AUTHORITY and Caribbean Airboats, Inc., Defendants.**

Civ. A. No. 1991–0009.

District Court, Virgin Islands, D. St. Croix.

Nov. 4, 1991.

Andrew C. Simpson, Britain H. Bryant, Christiansted, Virgin Islands, for plaintiffs.

Carey–Anne Moody, Christiansted, St. Croix, Virgin Islands, Maria Tankenson Hodge, St. Thomas, Virgin Islands, for defendants.

## MEMORANDUM

HUYETT, District Judge, Sitting by Designation.

 This action concerns a dispute over the purported award[1] by defendant Virgin Islands Port Authority ("VIPA") of an exclusive lease to defendant Caribbean Airboats, Inc. ("CAI") to use seaplane ramps owned by VIPA. The plaintiffs in this action, Sea Air Shuttle Corporation d/b/a VISS and Sea Air Shuttle Corporation of the Virgin Islands (referred to collectively as plaintiff "Sea Air"), raise certain contentions against defendants as a result of defendant VIPA's decision to award an exclusive lease to use VIPA's seaplane ramps to defendant CAI rather than to plaintiff Sea Air. Sea Air claims that defendants have violated the Sherman Act, 15 U.S.C. § 1 *et seq.*, and the Virgin Islands Antimonopoly Law, 11 V.I.C. § 1501 *et seq.*, by engaging in anticompetitive behavior. Defendant CAI moves for partial summary judgment arguing that (1) CAI is immune from Sherman Act antitrust liability because CAI only entered into negotiations for the lease of seaplane ramps and these acts are protected by the *Noerr–Pennington* doctrine;[2] (2) even if CAI and VIPA had entered into a lease, each defendant would be protected from antitrust liability by the doctrine of governmental immunity; (3) even if defendants CAI and VIPA were subject to antitrust liability, plaintiff Sea Air suffered no antitrust injury and thus possesses no standing to bring an antitrust action under the Sherman Act; and (4) neither CAI nor VIPA have violated the Virgin Islands Antimonopoly Law in light of the statute's guiding principle of following federal antitrust law. By order dated October 28, 1991, the Court granted CAI's

---

1. Plaintiffs, Sea Air Shuttle Corporation d/b/a VISS and Sea Air Shuttle Corporation of the Virgin Islands, contend that an exclusive lease has been awarded, while defendants assert that only an opportunity to negotiate a lease has been granted. As this issue has no effect upon the decision, the Court offers no opinion as to whether a lease has been awarded. For purposes of convenience in this opinion, the Court will refer to a lease as if one exists between defendants Virgin Islands Port Authority and Caribbean Airboats, Inc. This mere use of convenience in expression should not be interpreted as a conclusion that a lease in fact exists between the two defendants.

2. The *Noerr–Pennington* doctrine arises from decisions by the Supreme Court in *Eastern Railroad Presidents Conference et al. v. Noerr Motor Freight Inc., et al.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers of America v. Pennington et al.*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). Essentially, the *Noerr–Pennington* doctrine supports the proposition that private activity is immune from antitrust liability if the imposition of such liability would infringe upon the private actor's first amendment right to petition the government. For a thorough discussion and analysis of the *Noerr–Pennington* doctrine: *see* Bradley, *Noerr–Pennington Immunity From Antitrust Liability Under Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.: Replacing The Sham Exception With A Constitutional Analysis,* 68 Cornell L.Rev. 1305 (1984).

motion for partial summary judgment. We write now to explain our reasons.

## I. INTRODUCTION

Prior to September of 1989, when Hurricane Hugo struck the United States Virgin Islands, a seaplane service was operated by Virgin Islands Seaplane Shuttle ("VISS"). VISS provided passenger air service between downtown Christiansted, St. Croix, downtown Charlotte Amalie, St. Thomas, downtown San Juan, Puerto Rico, downtown Roadtown, Tortola, and St. John. As a result of destruction caused by Hurricane Hugo, VISS went out of business and seaplane service was interrupted. Among the physical structures that VISS used prior to its demise were seaplane ramps on St. Thomas and St. Croix owned by VIPA.

In early 1990, VIPA issued a request for proposals for the lease of the seaplane ramps on St. Thomas and St. Croix. Among the parties bidding were defendant CAI and Caribbean Airline Services, Inc. (hereinafter "CAS").[3] VIPA accepted CAI's proposal and rejected the CAS/Sea Air proposal. As a result, VIPA agreed to enter into an exclusive lease with CAI for the use of VIPA's seaplane ramps in St. Croix and St. Thomas. In light of VIPA's decision to award the lease to CAI and not Sea Air, Sea Air brings this action alleging United States Constitutional violations, Federal Aviation Act violations, violation of Virgin Islands territorial law, and violation of federal antitrust law. In response, defendant CAI moves for partial summary judgment with respect to plaintiff's antitrust claims under the Sherman Act and the Virgin Islands Antimonopoly Law. By order dated October 28, 1991, the Court granted CAI's motion for partial summary judgment. We write now to explain our reasons.

## II. DISCUSSION

### A. Standard For Summary Judgement.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As discussed below, CAI has demonstrated that as a matter of law VIPA and CAI are immune from antitrust liability under the Sherman Act and the Virgin Islands Antimonopoly Law. Under Rule 56(c), this Court must accordingly grant defendant CAI's motion for partial summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### B. Antitrust Liability Under The Sherman Act.

CAI argues that VIPA is immune from antitrust liability under the Sherman Act as a result of the doctrine of governmental immunity. As defendant CAI correctly notes, virtually all levels of government have been granted some degree of immunity from the operation of antitrust law generally and the Sherman Act specifically. *See Sea Land Service v. Alaska Railroad*, 659 F.2d 243 (D.C.Cir.1981), *cert. denied* 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982) (holding that a railroad owned and operated by the federal government was immune from antitrust action under the governmental immunity doctrine which protects the federal government, its agencies, and instrumentalities from the reaches of antitrust law); *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1942) (holding that a State of California agriculture program to market certain crops was immune from antitrust challenge under state immunity doctrine); Local Government Antitrust Act of 1984, 15 U.S.C. § 34 *et seq.* (where Congress granted limited antitrust immunity to local governments).

### 1. *Federal Action Immunity.*

■ CAI contends that the Government of the Virgin Islands and as a result VIPA

---

**3.** Plaintiff Sea Air contends that CAS is Sea Air's predecessor in interest and that Sea Air has been assigned CAS' full interest in the CAS bid submitted to VIPA. For purposes of this deci-sion, the Court shall assume that Sea Air has in fact been assigned CAS' full interest in the CAS bid submitted to VIPA.

possess federal action immunity and therefore are immune from Sea Air's claims under the Sherman Act. This argument presents an issue that has not been considered by the District of the Virgin Islands or the Third Circuit. Defendants' chief authority supporting the proposition that the Government of the Virgin Islands and VIPA possess federal action immunity is a Ninth Circuit decision holding that the Guam Airport Authority, a public corporation and autonomous instrumentality of the Government of Guam, was immune from antitrust scrutiny. *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285 (9th Cir.1985), *cert. denied* 475 U.S. 1081, 106 S.Ct. 1457, 89 L.Ed.2d 715 (1986). We find the reasoning of the Ninth Circuit highly persuasive. It appears clear that the Government of the Virgin Islands and VIPA are immune from antitrust scrutiny.

In *Sakamoto*, the plaintiffs, who were in the business of selling gifts to tourists in Guam, challenged an exclusive concession agreement given to one of plaintiffs' competitors at the Guam Airport Terminal. In rejecting plaintiffs' theory that Guam should be treated as a municipality and afforded limited antitrust immunity, *Sakamoto* held that the Government of Guam was wholly immune from antitrust scrutiny under the federal action doctrine. The Ninth Circuit stated:

> Guam's relationship to the federal government is different from Boulder's relationship to Colorado. As we have seen, the government of Guam is an instrumentality of the federal government over which the federal government exercises plenary control. Congress has granted it far fewer powers of self-government than the State of Colorado has granted the City of Boulder. There is no reason why Guam should enjoy less immunity than the federal government itself.

*Sakamoto* at 1288–89.

*Sakamoto* essentially holds that in respect to antitrust liability, the Government of Guam acts more as an arm of the federal government than as an autonomous governmental body possessing state or municipal attributes.

The plaintiffs in *Sakamoto* brought an action against the Government of Guam, the Guam Airport Authority, Duty Free Shoppers, Ltd., and various employees of the Guam Airport Authority and the Guam Government, alleging among other claims that the defendants engaged in "unlawful combination and conspiracy in restraint of interstate commerce by entering into contracts which conferred upon DFS [a defendant] exclusive rights for the sale and delivery of certain merchandise at the Guam International Airport Terminal ..." *Sakamoto v. Duty Free Shoppers, Ltd.*, 613 F.Supp. 381, 383–384 (D.C.Guam 1983); *aff'd* 764 F.2d 1285 (9th Cir.1985).[4] Similarly, plaintiff in this action alleges that defendants violated antitrust law by entering into a lease giving defendant CAI an exclusive right to utilize defendant VIPA's seaplane ramps. Further, in *Sakamoto*, "the Guam Legislature enacted Public Law 13–57, entitled 'Guam Airport Authority Act,' creating the Guam Airport Authority ('GAA'), as a public corporation and autonomous instrumentality of the Government of Guam." *Id.* at 384. Here, the Virgin Islands legislature created the Virgin Islands Port Authority as a "body corporate and politic constituting a public corporation and autonomous governmental instrumentality for the Government of the Virgin Islands ..." 29 V.I.C. § 541(a). Considering the close similarity between the agencies and the subject matter (i.e. exclusive leases and contracts) in this action and *Sakamoto*, we find the reasoning of the District Court in *Sakamoto* highly pertinent. The District Court in *Sakamoto* succinctly stated:

> It is this Court's determination that the Government of Guam, and, indirectly, the GAA, are federal agencies and instrumentalities for the purposes of the Anti-

---

**4.** The Ninth Circuit affirmed the District Court's decision in *Sakamoto*, 613 F.Supp. 381 (D.C.Guam 1983); *aff'd* 764 F.2d 1285 (9th Cir. 1985), and adopted the District Court's reasoning with respect to federal action immunity. For this reason, this Court relies upon the analysis and reasoning of both the Ninth Circuit and the District Court in *Sakamoto*.

trust law and that their challenged conduct is immune from antitrust scrutiny." *Id.* at 387.

Plaintiff Sea Air contends that VIPA is not immune from antitrust liability under federal action doctrine. Sea Air's arguments will be addressed in the order that they are raised.

First, Sea Air argues that the Third Circuit has decided that the Sherman Act applies to political subdivisions of the Virgin Islands.[5] In support of this assertion, plaintiff offers *Norman's on the Waterfront v. Wheatley,* 317 F.Supp. 247 (D.V.I. 1970), *aff'd* 444 F.2d 1011 (3d Cir.1971). Plaintiff's reading of *Norman's* is, however, incorrect. In *Norman's,* a retailer of alcoholic beverages brought action against enforcement of a Virgin Islands statute which fixed the price of alcohol by brand at certain prices. The court in *Norman's* found the Virgin Islands law "invalid under the Sherman Act and § 8(a) of the Organic Act." *Id.* at 254. Neither the District Court in *Norman's* nor the Third Circuit in *Norman's* stated, however, that the Sherman Act applied to political subdivisions of the Virgin Islands. Rather, both courts

simply found the Virgin Islands statute invalid in light of the proscriptions of the Sherman Act.[6]

Second, plaintiff argues that the Sherman Act reaches the Virgin Islands government and its agents and instrumentalities by relying upon *Hecht v. Pro–Football, Inc.,* 444 F.2d 931 (D.C.Cir.1971), *cert. denied* 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972). In *Hecht,* the District of Columbia Circuit found that a political subdivision of the District of Columbia was subject to liability under federal antitrust law. We agree with CAI that the *Hecht* decision has been limited to its own language. *See Sea–Land Service, Inc. v. The Alaska Railroad,* 659 F.2d 243, 246–47 (D.C.Cir. 1981), *cert. denied* 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982); *Feldman v. Gardner,* 661 F.2d 1295, 1307 (D.C.Cir. 1981); *IT & E Overseas, Inc. v. RCA Global Communications, Inc.,* 747 F.Supp. 6, 12 (D.D.C.1990). The distinctions made in *IT & E Overseas, Inc.* between incorporated and unincorporated territories also provide persuasive grounds for distinguishing this case from *Hecht.*[7]

---

5. Sea Air correctly notes that antitrust immunity is not lightly imputed. *United States v. Philadelphia National Bank,* 374 U.S. 321, 350–51, 83 S.Ct. 1715, 1734–35, 10 L.Ed.2d 915 (1963). This principle, however, does nothing to change the governmental immunity doctrine created by the courts to protect the federal government from scrutiny intended for more purely commercial transactions. *See Sea Land Service, Inc. v. The Alaska Railroad,* 659 F.2d 243 (D.C.Cir.1981), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982) (holding that a railroad operated and owned by the federal government was immune from antitrust liability).

6. The Third Circuit in *Norman's on the Waterfront, Inc. v. Wheatley,* 444 F.2d 1011 (1971), rejected the notion that state action immunity protected the Virgin Islands law by distinguishing the legislative scheme and stating "[t]he latest cases are in accord with the principle that an arrangement sponsored by the state is not necessarily state action for purposes of the antitrust laws." *Id.* at 1017 (citations omitted). We cannot accept the notion that simply because the Third Circuit refused to apply state action immunity in *Norman's,* that the Third Circuit implicitly recognized the applicability of the state action doctrine to the Government of the Virgin Islands. We also note that the *Norman's* decision occurred ten (10) years before the creation of federal action immunity in *Sea Land Service,*

*Inc. v. The Alaska Railroad,* 659 F.2d 243 (D.C.Cir.1981), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982).

7. The court in *IT & E Overseas, Inc.* rejected a plaintiff's claim that the Government of Guam and the Guam Telephone Authority ("GTA") were subject to antitrust scrutiny. In distinguishing local government instrumentalities of both the District of Columbia and Puerto Rico from the Government of Guam and its agencies and instrumentalities, the *IT & E Overseas* court stated: "the antitrust implications of actions undertaken by local government instrumentalities of the District of Columbia and Puerto Rico, both U.S. territories, have not been treated as actions of federal instrumentalities. Nevertheless, both the District of Columbia and Puerto Rico have different relationships with the federal government than the Government of Guam. The status of Guam and Puerto Rico cannot be equated: Puerto Rico is an incorporated territory while Guam is not.... Thus, *Sakamoto* expressly—and quite correctly—distinguished Guam from incorporated territories like Puerto Rico 'which are thought of as future states.'" *IT & E Overseas* at 12 (citations omitted). We note that the Virgin Islands is an unincorporated territory. *See Water Isle Hotel and Beach Club v. Kon Tiki St. Thomas, Inc.,* 795 F.2d 325, 327 (3d Cir.1986).

Plaintiff raises additional arguments in support of the proposition that VIPA should be treated as a state for purposes of claims under the Sherman Act.[8] We are not persuaded by these arguments and see no reason to depart from the reasoning of *Sakamoto.*

### 2. State Action Immunity.

■ Even if this Court were to accept plaintiff's argument that the Government of the Virgin Islands and as a result VIPA should be afforded only limited state action immunity, VIPA would still be immune from antitrust scrutiny. Under the state governmental immunity doctrine created in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1942), VIPA is immune from antitrust liability given VIPA's prescribed duties and the activities challenged in the instant action.

■ The state action doctrine immunizes certain conduct where the conduct is "(1) undertaken pursuant to a clearly articulated and affirmatively expressed state policy to displace competition with regulation and (2) the state itself actively supervises the conduct." *Ticor Title Insurance Co. v. Federal Trade Commission,* 922 F.2d 1122, 1129 (3d Cir.1991), *cert. granted,* — U.S. —, 112 S.Ct. 47, 116 L.Ed.2d 25 (1991), *citing Southern Motor Carriers Rate Conference, Inc. v. United States,* 471 U.S. 48, 57, 105 S.Ct. 1721, 1727, 85 L.Ed.2d 36 (1985). Assuming that VIPA should be treated as a state rather than a federal entity fails to change the result in this action given the prescripts of *Parker v. Brown* and *Ticor Title Insurance Co. v.*

*Federal Trade Commission,* 922 F.2d 1122, 1129 (3d Cir.1991), *cert. granted,* — U.S. —, 112 S.Ct. 47, 116 L.Ed.2d 25 (1991).

In applying the state action test, the first question this Court must decide is whether VIPA's actions were "undertaken pursuant to a clearly articulated and affirmatively expressed state policy to displace competition with regulation ..." *Id.* As the Third Circuit recognized in *Ticor,* under the Supreme Court's decision in *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), "in order to satisfy the clear articulation requirement of the state action test, one merely must show that 'the legislature contemplated the kind of action complained of.' " *Ticor* at 1130, *quoting Hallie,* 471 U.S. at 44, 105 S.Ct. at 1719. Sea Air attempts to defeat the application of state action immunity by arguing that the Virgin Islands legislature's grant of authority to VIPA prohibits regulation which displaces competition. The Virgin Islands legislature created VIPA to:

> establish, acquire, construct, develop and improve, own, operate and manage any and all types of marine terminals; to control the harbors of the Virgin Islands and to make available the benefits thereof in the widest economic manner, thereby promoting the general welfare and increasing commerce and prosperity.

29 V.I.C. § 543.

Sea Air argues that this language in itself defeats any construction of VIPA's authorities which would permit the acceptance of exclusive leases. We disagree. VIPA is

---

**8.** Plaintiff Sea Air raises these arguments in briefing on plaintiffs' motion for preliminary and permanent injunction and motion for summary judgment. Plaintiff cites the Third Circuit's decision in *Harris v. Boreham,* 233 F.2d 110 (3d Cir.1956), in support of the position that the Virgin Islands should be treated as a state in applying governmental immunity doctrine. After examining the *Harris* decision and the Supreme Court's opinion in *United States v. Wheeler,* 435 U.S. 313, 321, 98 S.Ct. 1079, 1085, 55 L.Ed.2d 303 (1978), we reject this argument.

Sea Air also argues that since the Third Circuit has held that the Commerce Clause, Import–Export Clause, and Contract Clause apply to the Virgin Islands, *JDS Realty Corp. v.*

*Government of the Virgin Islands,* 824 F.2d 256 (3d Cir.1987), *vacated and remanded,* 484 U.S. 999, 108 S.Ct. 687, 98 L.Ed.2d 640 (1988), *appeal dismissed as moot,* 852 F.2d 67 (3d Cir.1988), this Court must apply the Sherman Act to the Government of the Virgin Islands as well. Contrary to plaintiff's assertion, the Third Circuit in *JDS Realty Corp.* did not find that the Commerce Clause applied to the Virgin Islands because the Virgin Islands possessed attributes of sovereignty similar to that of a state. Rather, the Third Circuit in *JDS Realty Corp.* found "that the powers granted to Congress by the commerce clause are implicit in the territorial clause." *Id.* at 260 (citations omitted).

charged with controlling the harbors of the Virgin Islands as well as promoting the distribution of economic benefit. In addition, the Virgin Islands legislature specifically provided for VIPA to receive bids and regulate competition in conducting its own operations. *See* 29 V.I.C. § 572.[9] In consideration of the nature of VIPA's operations and the statutory scheme empowering VIPA, we conclude under *Hallie* that the Virgin Islands legislature contemplated VIPA's actions in soliciting bids and negotiating exclusive leases with seaplane services. For purposes of state action immunity, VIPA fulfills the clear articulation requirement of the state action test.

To fulfill the second prong of the test for state action immunity, VIPA's challenged conduct must be actively supervised by the Government of the Virgin Islands. As the Third Circuit stated in *Ticor*, "it is clear that the active supervision test requires that the state 'have and exercise' the power to review the particular anticompetitive acts." *Ticor* at 1135. In the instant matter, not only is VIPA a government body consisting "of persons appointed by the Governor with the advice and consent of the Legislature," 29 V.I.C. § 541(a), but also, approval of the Governor and Virgin Islands legislature is required for a valid lease of the seaplane ramps by VIPA. 29 V.I.C. § 543(6). Thus, the Government of the Virgin Islands possesses and exercises the power to review the alleged anticompetitive behavior between VIPA and CAI. Therefore, even if this Court were to conclude that VIPA was unqualified for federal action immunity, we would hold VIPA immune from antitrust scrutiny under the state action doctrine.[10]

### 3. The Noerr–Pennington Doctrine.

■ Defendant CAI offers several arguments in support of a conclusion that CAI is immune from antitrust scrutiny under the Sherman Act.[11] As CAI is protected from antitrust immunity under the *Noerr–Pennington* doctrine regardless of whether VIPA is immune under federal or state action immunity doctrine, we need not address CAI's other arguments.

The *Noerr–Pennington* doctrine supports the proposition that private activity is immune from antitrust liability if the imposition of liability would infringe upon the private actor's first amendment right to petition the government. In *Greenwood Utilities Commission v. Mississippi Power Company*, 751 F.2d 1484 (1985), where a municipally owned electric commission brought an antitrust action against a private utility company for allegedly anticompetitive terms in the private company's contract with a federal agency, the Fifth Circuit stated that the *Noerr–Pennington* doctrine:

allows individuals or businesses to petition the government, free of the threat of antitrust liability, for action that may have anticompetitive consequences. *Noerr–Pennington* protection is grounded on the theory that the right to petition guaranteed by the First Amendment extends to petitions for selfish, even anticompetitive ends. As the Court explained when it announced the doctrine in *Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), "a construction of the Sherman Act that would disqualify people from taking a public position on matters in which they were financially interested would thus deprive the government of a valuable source of information and, at the same time, deprive the people of their right to petition in the very instances in which

---

**9.** We also note that Plaintiff Sea Air brought this complaint after its own bid to be the exclusive lessee of VIPA's seaplane ramps was rejected.

**10.** We note for purposes of clarity that we do not believe that state action doctrine should be applied to the Government of the Virgin Islands in light of the Ninth Circuit's decision in *Sakamoto*.

**11.** CAI argues that (1) no conspiracy exists between CAI and VIPA under the Sherman Act; (2) the *Noerr–Pennington* doctrine wholly protects CAI because no formal lease exists between CAI and VIPA; and (3) plaintiffs lack standing to bring an antitrust action since plaintiffs can demonstrate no antitrust injury.

that right may be of the most importance to them." *Id.* at 139, 81 S.Ct. at 530–31. *Greenwood Utilities* at 1497–98.

Under the *Noerr–Pennington* doctrine then, it is established that defendant CAI cannot be held liable for antitrust conspiracy for its acts in petitioning VIPA for an exclusive lease. Further, the *Noerr–Pennington* doctrine applies in instances where the government body is immune from antitrust liability under either state action or federal action doctrine. *See e.g. Sakamoto.*

Sea Air places great weight on its allegation that VIPA and CAI have reached an agreement. In Sea Air's view, the fact that CAI entered into an exclusive lease with VIPA, rather than merely petitioning VIPA to grant CAI an exclusive lease, removes defendant CAI's actions from the protection of the *Noerr–Pennington* doctrine. In *Greenwood Utilities,* where the appellant contended that the *Noerr–Pennington* doctrine's protections did not extend to a "restrictive contract provision itself even though the doctrine might protect the conduct that caused the government to adopt it," *Id.* at 1504, the Fifth Circuit stated:

[t]hat Mississippi Power [the appellee], a private entity, is a party to the agreement effecting the government's decision should not create antitrust consequences for the anticompetitive aspects of the arrangement. This result is compelled if *Noerr–Pennington* protection is to have meaning in the context of agreements with the government. First Amendment petitioning privileges would indeed be hollow if upon achieving a petitioned-for end the petitioner were then subjected to antitrust liability for his success.... We see no reason why the result should be different when the government's decision is embodied in a contract with a private entity rather than in a regulation or statute. In all three cases it is the action of the government, rather than of private parties, that allegedly harms competition.

*Greenwood Utilities* at 1504–1505.

Under the reasoning of *Greenwood Utilities,* it is clear that defendant CAI is im-

mune from the reaches of federal antitrust liability.

**C. Antitrust Liability Under The Virgin Islands Antimonopoly Law.**

Sea Air also claims that defendants VIPA and CAI are liable for antitrust activities under the Virgin Islands Antimonopoly Law. 11 V.I.C. § 1501 *et seq.* Sea Air argues that since the Virgin Islands Antimonopoly Law applies to "any corporation," 11 V.I.C. § 1504, and VIPA was created as a "public corporation and autonomous governmental instrumentality of the Government of the Virgin Islands," 29 V.I.C. § 541(a), VIPA must be subject to liability under the Virgin Islands Antimonopoly Law. Defendants CAI and VIPA rely on the fact that the Virgin Islands Antimonopoly Law prescribes only the actions of "persons," 11 V.I.C. § 1503, who are defined as "any natural person, or any corporation, partnership, or associations of persons." 11 V.I.C. § 1504. Defendants contend that since the definition of persons does not include the Government of the Virgin Islands or Virgin Islands agencies, VIPA is not subject to liability under the Virgin Islands Antimonopoly Law. If there were no other pertinent language in the Virgin Islands Antimonopoly Law, perhaps a difficult issue of interpretation would exist.

The Virgin Islands Antimonopoly Law, however, offers guidance regarding the interpretation of the statute's language. The Act specifically states that "when the language of this Chapter is the same or similar to the language of a Federal Antitrust Law, the District Court in construing this chapter shall follow the construction given the Federal Law by the Federal courts." 11 V.I.C. § 1518. Although the language in the Sherman Act and the Virgin Islands Antimonopoly Law is not identical, the language in § 1518 evidences the intention that the Virgin Islands Antimonopoly Law be applied in a manner consistent with the Sherman Act and other federal antitrust statutes. In consideration of the immunity from federal antitrust liability

possessed by defendant VIPA, it follows that the Virgin Islands Antimonopoly Law should be interpreted to exclude VIPA from the definition of those persons subject to antitrust scrutiny under the Virgin Islands Antimonopoly Law.[12] This conclusion respects the intention of the drafters of the Virgin Islands Antimonopoly Law and makes good sense in light of the governmental immunity possessed by VIPA under federal law.

### III. CONCLUSION

In consideration of the protections from antitrust suit afforded governmental agencies and instrumentalities under the federal action and state action doctrines, the legislative instruction that the Virgin Islands Antimonopoly Law be interpreted and applied in a manner consistent with federal antitrust law, and the *Noerr–Pennington* doctrine's protection of private actors' first amendment rights to petition the government, we conclude as a matter of law that VIPA and CAI possess immunity from liability under the Sherman Act, 15 U.S.C. § 1 *et seq.*, and the Virgin Islands Antimonopoly Law, 11 V.I.C. § 1501 *et seq.* Accordingly, the Court granted CAI's motion for partial summary judgment by Order of October 28, 1991.

---

**12.** Sea Air offers no persuasive argument against the application of *Noerr–Pennington* protection to CAI in regard to the Sea Air's claim against CAI under the Virgin Islands Antimonopoly Act.