AMBROS, INC., a corporation, Plaintiff,

v.

A. G. MADDOX, Acting Commissioner of Revenue and Taxation, Government of Guam, Defendant.

No. 1–62.

District Court of Guam.

April 4, 1962.

Turner, Barrett & Ferenz, Howard G. Trapp, Agana, Guam, for plaintiff.

Louis A. Otto, Jr., Atty. Gen., Harold W. Burnett, Deputy Atty. Gen., Richard D. Magee, Deputy Island Atty., Agana, Guam, for defendant.

SHRIVER, District Judge.

·The plaintiff, Ambros, Inc., a Guam corporation, brought this action against the defendant for recovery of gross re-

ceipts taxes paid to the defendant as Acting Commissioner of Revenue and Taxation of the government of Guam. This Court has jurisdiction under the Organic Act of Guam and Section 19508 of the Government Code of Guam, which permits an action in the District Court for the refund of any tax imposed and alleged to have been erroneously and illegally assessed or collected. At the pretrial conference the parties stipulated as to the underlying facts and further stipulated that after the submission of briefs the Court would determine the validity of the tax; and that if the Court found for the plaintiff, the amount of the tax would be subject to plaintiff's proof. This opinion holds that the tax in question, if otherwise valid, violates the tax uniformity provision in Section 11 of the Organic Act of Guam, 48 U.S.C.A. § 1423a. The plaintiff is engaged in the importation and distribution of alcoholic beverages and tobacco products. As such, it was subject to the payment of ad valorem taxes on such beverages or tobacco products, but if such products were sold to a military purchaser or were exported, the amount of such tax could be recovered. As part of its business, it sold products to the Trust Territory of the Pacific Islands and received a refund or drawback of the taxes previously paid. The defendant contends that the gross proceeds from such sales were subject to a two per cent (2%) gross receipts tax under the following provisions of the Government Code of Guam:

"19541.01. *Tax on the Business of Selling Tangible Personal Property.* Upon every person engaging or continuing within Guam in the business of selling any tangible property whatsoever (not including, however, bonds or other evidence of indebtedness or stocks) a tax equivalent to two per cent (2%) of gross proceeds of sales.

"19541.0101. Provided, that gross proceeds of sales of tangible property in foreign commerce shall constitute a part of the measure of the tax imposed."

While it was agreed that sales to the Trust Territory are in foreign commerce, it is to be noted that the same tax would be applicable on exports from Guam to the United States. Section 19500.04 provides:

"'Foreign' shall mean that which is outside of the territory of Guam; and 'domestic' shall mean that which is legally within the territory of Guam."

The plaintiff contends that the tax, if made applicable by one of the several States, clearly violates the commerce clause of the United States Constitution, Art. I, Sec. 8, Cl. 3. The defendant concedes that such a tax would probably violate Art. I, Sec. 10, Cl. 2 of the Constitution as well, citing Richfield Oil Corp. v. State Board of Equalization, 329 U.S. 69, 67 S.Ct. 156, 91 L.Ed. 80 (1946). In Anderson v. Mullaney (9 Cir. 1951) 191 F. 2d 123, 128, 13 Alaska 332; Aff. 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458, the Court of Appeals had occasion to consider an Alaskan statute which imposed a higher license fee on nonresident commercial fishermen than it did on resident fishermen. The Court stated:

"In dealing with those aspects of the Commerce Clause which make it a limitation upon the power of the State, Mr. Justice Frankfurter, speaking for the court in Freeman v. Hewit, 329 U.S. 249, 252, 67 S.Ct. 274, 276, 91 L.Ed. 265, said: 'Our starting point is clear. In two recent cases we applied the principle that the Commerce Clause was not merely an authorization to Congress to enact laws for the protection and encouragement of commerce among the States, but by its own force created an area of trade free from interference by the States. In short, the Commerce Clause even without implementing legislation by Congress is a limitation upon the power of the States. Southern Pacific Co. v. [State of] Arizona, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915; Morgan v. [Commonwealth of] Virginia, 328 U.S. 373, 66 S.Ct. 1050 [90 L.Ed.

1317]. In so deciding we reaffirmed, upon fullest consideration, the course of adjudication unbroken through the Nation's history.' It cannot be said that the Alaska legislature has any greater freedom in burdening commerce between the States and the Territory than it would have if Alaska were a State.

"The reason why the Territorial Legislature is thus limited is not that the Commerce Clause, *ex proprio vigore*, operates as a constitutional limitation. For so far as the Constitution is concerned, Congress *might*, we assume, confer upon a territory the power to impose burdens upon commerce between the territory and the States, for Congress may 'make all needful Rules and Regulations' respecting the territories under Art. IV, § 3, cl. 2. Shively v. Bowlby, 152 U.S. 1, 48, 14 S.Ct. 548, 38 L.Ed. 331. But we cannot conceive that in granting legislative power to the Territorial Legislature it was intended that the power should exceed that possessed by the legislature of a State in dealing with commerce. The words 'all rightful subjects of legislation' describing the extent to which the legislative power of the Territory should extend, 48 U.S.C.A. § 77, do not include the imposition upon commerce such as that here involved of burdens which a State might not create under like circumstances. 'All rightful subjects of legislation' must be held to refer to matters local to Alaska."

In Buscaglia v. Ballester (1 Cir. 1947) 162 F.2d 805; Cer. den. 332 U.S. 816, 68 S.Ct. 154, 92 L.Ed. 393, the Court of Appeals had occasion to consider the applicability of the above provisions of the Constitution to an unincorporated territory. It should be noted in the Alaskan case, Alaska was not only an incorporated territory, but that the Constitution was made applicable to it. The Court stated:

"Nor does either the commerce clause, Art. I, Section 8, Cl. 3, or the clause prohibiting the imposition of duties or imposts on imports, Art. I, Section 10, Cl. 2, of the federal Constitution impose any barrier to the laying of the disputed tax.

"The commerce clause gives Congress plenary power to regulate our foreign and interstate commerce and thus as a necessary consequence it has the secondary effect of a restriction upon the power of the states in the premises. It thus has two aspects, but in neither of them, either as a grant of federal power or as a necessarily consequential limitation upon state power, does it affect Puerto Rico. In its aspects of a grant of power to the federal government it adds nothing to the comprehensive power given to Congress by the Constitution, Art. IV, Section 3, Cl. 2, to legislate with respect to national territory, and it can have no consequential effect of limiting territorial action since Congress already has the power under Art. IV, Section 3, Cl. 2, supra, to limit such action to any extent it chooses, even to the extent of annulling local legislation. See § 34 of the Organic Act. 39 Stat. 951, 961, 48 U.S.C.A. § 822 et seq.

"The constitutional prohibition upon the imposition of duties or imposts on imports is inapplicable because that prohibition is laid upon the states, and Puerto Rico, as we frequently have occasion to say, is not a state but an organized territory not incorporated into the United States, N. L. R. B. v. [Gonzalez] Padin Company, Inc., 1 Cir., 161 F. 2d 353, and cases cited.

"The actual question presented as we see it is whether Congress, in the exercise of its Constitutional power under Art. IV, Section 3, Cl. 2, to 'make all needful Rules and Regulations' respecting the Territory of Puerto Rico, has seen fit to give the insular government power to impose the disputed tax."

In the Buscaglia case the questioned tax was a personal property tax on imports from a foreign country which had reached Puerto Rico, but which had not cleared customs or been unloaded.

The defendant further contends in the instant case that the tax in question has been approved by the Congress under Section 19 of the Organic Act of Guam, 48 U.S.C.A. § 1423i, which provides, in part:

"* * * All laws enacted by the legislature shall be reported by the Governor to the head of the department or agency designated by the President under section 3 of this Act, and by him to the Congress of the United States, which reserves the power and authority to annul the same. If any such law is not annulled by the Congress of the United States within one year of the date of its receipt by that body, it shall be deemed to have been approved."

This section varies from similar sections in Organic Acts in that other Acts provide that the Congress may annul local legislation but do not provide that the failure to annul shall constitute approval.

Before this Court attributes to the Guam Legislature a legislative intent to impose a tax burden on foreign or State-territory commerce, the Court must consider the legislation as a whole. It then becomes clear that Section 19541.-0101 is part of comprehensive tax legislation which was copied from some other jurisdiction and that the proviso originally read:

"Provided, that gross proceeds of sales of tangible property in foreign commerce shall *not* constitute a part of the measure of the tax imposed." (Underscoring supplied).

Otherwise, there would be no reason for its inclusion, as Section 19541.01 would be all-inclusive without it. But if a legislative mistake is involved, this Court is without authority to correct it. As Mr. Justice Clark stated in his dissenting opinion, Granville-Smith v. Granville-Smith, 349 U.S. 1, 16, 75 S.Ct. 553, 99 L.Ed. 773 (1955),

"A 'fundamental tenet of judicial review,' the late Mr. Justice Jackson said, is that 'not the wisdom or policy of legislation, but only the power of the legislature, is a fit subject for consideration by the courts.' Jackson, The Struggle for Judicial Supremacy (1941), p. 81. Some 10 years later in Harisiades v. Shaughnessy, 342 U.S. 580, 590, [72 S.Ct. 512, 96 L.Ed. 586] he added that 'judicially we must tolerate what personally we may regard as a legislative mistake.' "

Nor is this Court entirely persuaded that Anderson v. Mullaney, supra, is conclusive in view of Arctic Maid v. Territory of Alaska (9 Cir. 1960), 277 F.2d 120; reversed 366 U.S. 199, 81 S.Ct. 929, 6 L.Ed.2d 227. Guam is an unincorporated territory and its legislative enactments are subject to annullment by the Congress and if not annulled, are deemed to have been approved. As the Court of Appeals pointed out in the Mullaney case, the Congress might confer upon a territory the power to impose burdens upon commerce. This Court cannot hold that it has not done so by its approval implicit in its failure to annul.

We must now concern ourselves with the question as to whether the tax, as part of comprehensive tax legislation, is discriminatory. Section 19563 of the Government Code permits a tax drawback on sales of alcoholic beverages manufactured or produced in Guam or brought into the territory of Guam and subsequently exported. Section 19592 permits a similar drawback on tobacco manufactured or produced in Guam or brought into Guam and subsequently exported. Section 19541.0104 provides:

"Provided, that a manufacturer or producer engaging in the business of selling his products to manufacturers, wholesalers, or licensed retailers, shall not be required to pay the tax imposed in this act for the privilege

of selling such products at wholesale. *Nor shall any such manufacturer or producer be required to pay the tax imposed in this act for the privilege of selling products for delivery to the purchaser outside of Guam."* (Underscoring supplied).

This subsection literally means that a local manufacturer or producer who sells directly for export is to be given a competitive tax advantage over sellers for export who are neither manufacturers nor producers. Thus, a manufacturer or producer of alcoholic beverages or tobacco products or any other product who sells directly for export receives a tax advantage over others, an advantage which does not appear to be authorized by the Organic Act of Guam. Section 11 of such Act, 48 U.S.C.A. § 1423a provides in part:

"The legislative power of Guam shall extend to all subjects of legislation of local application not inconsistent with the provisions of this Act and the laws of the United States applicable to Guam. Taxes and assessments on property, internal revenues, sales, license fees, and royalties for franchises, privileges, and concessions may be imposed for purposes of the government of Guam as may be *uniformly* provided by the Legislature of Guam," etc. (Underscoring supplied).

This Court therefore holds that the tax in question here is invalid because not uniformly applicable and, therefore, in violation of the legislative powers conferred by the Organic Act.

IT IS THEREFORE ORDERED, pursuant to the agreement of the parties, that unless the parties can agree within ten (10) days as to the amount of the tax, the action will be set for hearing on notice for the purpose of determining the amount of the tax. If the parties can agree as to the amount of the tax, an appropriate judgment shall be prepared by the plaintiff and after approval as to form by the defendant, be submitted to the Court within fifteen (15) days from this date.