**Lawrence Abram BENSON, D.D.S., et al., Plaintiffs-Appellants,**

v.

**ARIZONA STATE BOARD OF DENTAL EXAMINERS et al., Defendants-Appellees.**

No. 80–5611.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1982.

Decided March 29, 1982.

As Amended May 17, 1982.

Barry Becker, Phoenix, Ariz., for plaintiffs-appellants.

Michael W. Sillyman, Asst. Atty. Gen., Phoenix, Ariz., for defendants-appellees.

Before PREGERSON and FERGUSON, Circuit Judges, and ORRICK, District Judge.[*]

PREGERSON, Circuit Judge:

Appellants, twenty-five dentists licensed to practice in states other than Arizona, appeal from the dismissal of their lawsuit challenging features of the statutory system through which Arizona regulates the practice of dentistry. Their suit focused principally on the distinction the Arizona scheme draws between "licenses" to practice dentistry, which are granted only to those who pass the state's dentistry examination, and "restricted permits," for which that examination is not a prerequisite. Holders of restricted permits are allowed to practice dentistry, but only as unsalaried employees of charitable dental clinics. Appellants, who hold restricted permits, contend that this system violates federal and state antitrust laws, unconstitutionally burdens the right of interstate travel, and infringes their rights to due process and equal protection. For the reasons set out below, we conclude that the federal antitrust claims are barred by the state action antitrust exemption, and that appellants' constitutional claims are without merit. Accordingly, we affirm the judgment of the district court.

[*] Honorable William H. Orrick, Jr., United States District Judge for the Northern District of California, sitting by designation.

## BACKGROUND

Arizona allows persons to practice dentistry if they secure either a license or a restricted permit. Obtaining a license requires passing an examination, administered by the appellee Board of Dental Examiners ["the Board"], which tests "both theory and clinical proficiency," as the legislature directed. A.R.S. § 32–1233(A). Even persons licensed to practice dentistry in other states (like appellants) must take this examination to get an Arizona license.[1]

The examination is not required for a restricted permit. Anyone licensed to practice dentistry in another state (or in a territory or the District of Columbia) and who has a contract to do unsalaried dental work for a charitable clinic or organization is eligible for a restricted permit if he meets either of these two conditions: (1) he spent the immediately preceding three years engaged in active practice, residency, approved postgraduate work, or some combination of these; or (2) the Board "is otherwise satisfied of his competence and proficiency to practice dentistry." A.R.S. § 32–1237.[2]

There is no restriction on what types of dental work holders of restricted permits may perform. They are, however, permitted to practice only as employees of charitable clinics or organizations and may not receive compensation for the dental work they perform. A.R.S. § 32–1239.

All twenty-five appellants hold licenses to practice dentistry from states other than Arizona, and all hold Arizona restricted permits. Some of the appellants live in Arizona and some in other states. They began this lawsuit in December 1979 with a complaint naming the Board and its individual members as defendants. Three counts were stated: violation of sections 1 and 2 of the Sherman Act; violations of Arizona's antitrust laws; and violation of the constitutional rights of due process, equal protection, and interstate travel.[3]

The district court dismissed appellants' amended complaint in July 1980. Count One (Sherman Act violations) was dismissed for failure to state a claim; the court based this ruling on the "state action" antitrust immunity. Count Three (constitutional violations) was dismissed because plaintiffs lacked standing to assert the rights of third parties, and because on their own behalf they had not stated a claim for relief. With the federal counts—and pendent jurisdiction—gone, Count Two was then dismissed for lack of complete diversity.

## THE ANTITRUST CLAIM AND THE STATE ACTION DOCTRINE

Count One of appellants' complaint alleged that since its inception in 1913, the Board has combined with Arizona dentists and dentists' organizations to restrain and monopolize the practice of dentistry in the state by restricting entry into the profession, limiting the number of dentists, and fixing prices. The district court dismissed this count on the basis of the "state action" antitrust doctrine.

■ Under that doctrine, "[g]ood-faith actions of state officials are immune from attack under the antitrust laws if those officials act within the scope of their authority in the furtherance of a declared governmental policy or legislative scheme." 7 J. von Kalinowski, *Antitrust Laws and Trade Regulation* § 46.01. The doctrine stems from *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), where

---

1. The Board, however, accepts certification from the National Board of Dental Examiners in lieu of the theory test, and accepts a Western Regional Examining Board certificate in place of the clinical test.

2. The conditions for obtaining a restricted permit are spelled out in A.R.S. § 32–1237, and they incorporate the conditions stated in § 32–1232(A). The two sets of conditions partially overlap; the description in the text is intended to state the result of combining them.

3. Appellants subsequently amended their complaint, adding allegations that the Board had acted outside the scope of its authority and that some of the appellants lived outside Arizona, and naming the Arizona Dental Association as a defendant.

California's cartel program for marketing raisins was held lawful.

The Supreme Court recently examined the state action immunity in *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). There the Court reviewed the cases applying the doctrine and concluded: "These decisions establish two standards for antitrust immunity under *Parker v. Brown*. First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the State itself." *Id.* at 105, 100 S.Ct. at 943 (quoting the plurality opinion in *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978).

■ Arizona's regulation of dentistry satisfies both of the Court's criteria. First, the system is laid out in state statutes—title 32, chapter 11 of the Arizona Revised Statutes. In particular, these statutes establish the Board, A.R.S. § 32–1203, confer upon it the power to regulate the practice of dentistry and control admission thereto, § 32–1207, command it to administer exam- inations "on both theory and clinical proficiency" as a prerequisite for a dental license, § 32–1233, and establish the system of restricted permits, §§ 32–1237 to –1239. Thus the challenged system is " 'clearly articulated and affirmatively expressed as state policy.' " [4] Second, the system is " 'actively supervised' by the State itself" because it is supervised by a state agency, the Board.[5] Supervision by the Board is just as much active state supervision as was supervision by the Arizona Supreme Court of the state's ban on attorney advertising in *Bates v. State Bar*, 433 U.S. 350, 362, 97 S.Ct. 2691, 2698, 53 L.Ed.2d 810 (1977).[6]

■ Appellants seek to avoid application of the state action immunity by arguing that it applies only when the authority that the legislature conferred on the government entity involved indicates that the legislature contemplated the anticompetitive action at issue. They assert that their complaint—whose allegations must be taken as true on this appeal[7]—alleges that the members of the Board acted outside the scope of the legislature's directives. The Amended Complaint indeed alleges that the Board acted *ultra vires*, but this by itself is a conclusory legal assertion that this court is

4. The detailed statutory scheme by which Arizona's legislature authorized the system of dentistry regulation challenged here contrasts sharply with the situation presented in *Community Communications Co. v. City of Boulder*, —— U.S. ——, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). There, the state had done nothing specifically directing Boulder to adopt its anticompetitive restrictions on the cable television industry; it had merely granted Boulder the general right of "home rule" autonomy. The Court found that this grant left the state in a position "of mere *neutrality* respecting the ... actions challenged as anticompetitive" and thus did not constitute clear state articulation of the anticompetitive policy. *Id.* at ——, 102 S.Ct. at 843. The situation in the instant case is quite the contrary—Arizona's legislature has affirmatively mandated the challenged policies.

5. The Court has found this requirement of active supervision violated when the state merely acquiesces in an anticompetitive policy adopted on a private party's initiative, *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976), and where the state merely authorized and enforced price-setting by private parties without setting prices itself or re- viewing their reasonableness. *Retail Liquor Dealers, supra*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233:

6. The Arizona dental regulations satisfy another criterion stated in *Bates, supra*, for applying the state action exemption: existence of a strong state interest in the challenged restraint. *Bates* emphasized that the state had a vital interest in protecting the public by regulating the legal profession, and that such regulation has been a traditional state function. 433 U.S. at 361–62, 97 S.Ct. at 2697–98. State regulation of the healing professions, including dentistry, serves just as vital a role in protecting the public, and is just as traditional. Appellants themselves alleged that the Board has been regulating dental practice since 1913—one year after Arizona became a state.

7. In reviewing a dismissal for failure to state a claim upon which relief can be granted, the court must take all material allegations in the complaint as true. *Local 1380, B. R. A. C. v. Dennis*, 625 F.2d 819, 825 (9th Cir. 1980).

not required to accept. *Kennedy v. H & M Landing, Inc.*, 529 F.2d 987 (9th Cir. 1976) (per curiam). Appellants insist, however, that ¶ 18 of their amended complaint alleges "specific facts" to support their assertion.

Appellants are mistaken. Paragraph 18(a) of the amended complaint alleges that the Board has failed to adopt reciprocity legislation "as mandated by the Arizona Legislature"—but the relevant statute, A.R.S. § 32–1235, merely *permits* the Board, "in its discretion," to adopt such regulations. Paragraph 18(b) points to the Board's "imposition . . . of a practical exam not required by statute," yet A.R.S. § 32–1233(A) specifically requires that the exam cover "clinical proficiency" as well as theory. Paragraph 18(c) alleges that the Board has imposed unreasonable requirements on examinees, such as that they must provide their own patients for the practical exam, and ¶ 18(c) attacks the Board for testing applicants on procedures appellants deem "archaic." But A.R.S. § 32–1233(A) authorizes the Board to determine both the manner in which the exam will be given and the subjects to be covered.[8] The remaining portions of ¶ 18 are patently conclusory.

Thus appellants have not alleged specific facts to show that the Board exceeded its authority. Hence the Board, since it satisfies the criteria laid down by the Supreme Court in *Midcal, supra*, is entitled to the state action antitrust immunity, and Count One of appellants' complaint was properly dismissed.

## APPELLANTS' CONSTITUTIONAL CLAIMS

Appellants contend that Arizona's regulation of dentistry violates the right of interstate travel and the Equal Protection Clause of the Fourteenth Amendment.[9] The district court dismissed this portion of their complaint for failure to state a claim upon which relief could be granted.[10] We will discuss the two constitutional claims separately.

### The right to travel:

Appellants alleged in their complaint that Arizona's "arbitrary" licensing requirements "unreasonably restrict dentists from

---

**8.** That the statute did not itself lay down all the requirements that the Board imposed in no way shows that the Board exceeded its authority. "[T]he state need not have contemplated the precise action complained of as long as it contemplated the kind of action to which objection was made." *Princeton Community Phone Book, Inc. v. Bate*, 582 F.2d 706, 717 (3rd Cir.), *cert. denied*, 439 U.S. 966, 99 S.Ct. 454, 58 L.Ed.2d 424 (1978). *See City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 415, 98 S.Ct. 1123, 1138, 55 L.Ed.2d 364 (1978), where the plurality opinion notes that for a municipality to show that its conduct was pursuant to state policy and thus immune from antitrust attack, it need not "be able to point to a specific, detailed legislative authorization" but need only show that the authority it was given implied that the legislature contemplated the *kind* of action taken.

**9.** In their complaint, appellants also alleged that the challenged regulations denied them due process "by imposing arbitrary and unreasonable procedures as a prerequisite for practicing dentistry." On this appeal, however, appellants have not addressed this due process claim. In their discussion of the constitutional

issues they focus on the right to travel and on the contention that the distinction between licensed dentists and those holding restricted permits lacks any rational basis. This latter contention is an equal protection argument and will be analyzed as such.

**10.** Appellants initially sought to base their constitutional challenge to Arizona's dentistry regulations in part on their assertion of the rights of third parties. They contended that the challenged regulations impaired the quality and quantity of dental care available to indigents and to the public generally. The district court ruled that appellants lacked standing to assert the rights of these third parties.

On appeal, appellants have abandoned their attempt to obtain relief on behalf of third parties. They argue only that Judge Muecke misread their complaint when he concluded that if appellants lacked third-party standing they must lack standing altogether. Appellants contend that they have standing in their own right because their own ability "to earn a living and practice their chosen profession" is at stake. Thus, third-party standing is not an issue on appeal.

moving to Arizona." They thus contend that the challenged regulations infringe the constitutional right of interstate travel—a right recognized for over a century[11].

In contemporary decisions, the right to travel has typically been invoked in connection with the Equal Protection Clause: a conclusion that a challenged legislative classification penalizes the exercise of the right to travel subjects that classification to "strict scrutiny" under the Equal Protection Clause—which inevitably results in invalidating the statute.[12] In each of these recent cases, the Court found that exercise of the right to travel was penalized because the challenged legislation disadvantaged newcomers to the state vis-a-vis previous residents. That crucial predicate for a right-to-travel attack on legislation is missing here. The challenged Arizona regulatory scheme, whatever its faults, simply does not treat migrants to Arizona any differently than residents. *Everyone* —longtime resident or new arrival—must pass the Board's examination in order to get a dental license. *Everyone*—resident or newcomer—who obtains only a restricted permit is limited to unpaid work for a dental clinic. Nothing in this scheme penalizes the exercise of the right to travel.[13] Hence the district court acted properly in dismissing the portion of the complaint that alleged violation of the right to travel.

### Equal Protection:

Appellants alleged in their complaint that the Arizona statutory scheme violated their equal protection rights by "creating two classes of dentists who are similarly situated with no rational basis for the disparity in treatment between the two." The two classes are the licensed dentists and those holding restricted permits. The gist of appellants' equal protection claim is that Arizona has officially found members of both these classes qualified to practice dentistry, but allows only the licensed dentists to be paid for doing so. This disparate treatment, appellants argue, cannot be justified as professional licensing requirements are generally justified—i.e., as necessary to protect the public from incompetents—since members of both classes are permitted to do all types of dental work. Consequently, they conclude, the disparate treatment has no rational basis and violates equal protection.

The persons allegedly disadvantaged by the Arizona scheme—those who hold restricted permits—do not constitute a "suspect classification,"[14] nor does the

11.  *See Crandall v. Nevada,* 73 U.S. (6 Wall.) 35, 18 L.Ed. 744 (1868) (holding invalid a state tax on persons leaving the state). The right has been variously traced to the Privileges and Immunities Clause of Article IV, § 2, to the analogous clause in the Fourteenth Amendment, and to the Commerce Clause. *Shapiro v. Thompson,* 394 U.S. 618, 630 n.8, 89 S.Ct. 1322, 1329 n.8, 22 L.Ed.2d 600 (1969). The Court in *Shapiro* declined to pinpoint a source: "We have no occasion to ascribe the source of this right . . . to a particular constitutional provision." *Id.* at 630, 89 S.Ct. at 1329 (footnote omitted).

12.  *See, e.g., Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (state's conditioning county-paid nonemergency hospitalization or medical care for indigents on year's residence in county penalizes exercise of right to travel and hence requires strict scrutiny; *held,* statute violates equal protection); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (durational residency requirement for voting impinges on both right to vote and right to travel and hence requires strict scrutiny; *held,* statute vio-

lates equal protection); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (durational residency requirements for welfare benefits penalize exercise of right to travel and hence demand strict scrutiny; *held,* the requirements violate equal protection).

13.  Appellants seem to be arguing that the right to travel requires Arizona to allow anyone with a dentistry license from another state to practice in Arizona. This is incorrect. *See Hawkins v. Moss,* 503 F.2d 1171, 1178–79 (4th Cir. 1974), *cert. denied,* 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 400 (1975):

The right of federal citizenship as reflected in the "right to travel" . . . is not to be construed to mean that a citizen carries with him from state to state an absolute right of comity to practice, not a "common occupation", but a profession, which is properly subject to state regulation, in any state to which he travels.

14.  Suspect classifications whose use triggers "strict scrutiny" include race, *Hunter v. Erickson,* 393 U.S. 385, 391–92, 89 S.Ct. 557, 560–61,

scheme infringe or burden any fundamental right.[15] Hence, we scrutinize the scheme under the "rational basis" standard, and will invalidate it only if no grounds can reasonably be conceived to justify it.[16] But Arizona's need to ensure an adequate supply of dentists willing to furnish indigent persons with dental care provides such a ground here.

Consequently appellants' equal protection challenge to the Arizona scheme, like their right-to-travel attack, must fail. · The district court correctly dismissed Count Three of appellants' complaint. Since we have already held that Count One, the only other federal count, was properly dismissed, the district court was also correct in dismissing the state claim, Count Two, for lack of diversity.

The judgment of the district court is AFFIRMED.

21 L.Ed.2d 616 (1969); nationality, *Oyama v. California*, 332 U.S. 633, 646, 68 S.Ct. 269, 275, 92 L.Ed. 249 (1948); and alienage, *Graham v. Richardson*, 403 U.S. 365, 371–72, 91 S.Ct. 1848, 1851–52, 29 L.Ed.2d 534 (1971)—though there are contexts in which discrimination against aliens does not receive strict scrutiny. *Foley v. Connelie*, 435 U.S. 291, 295–96, 98 S.Ct. 1067, 1070, 55 L.Ed.2d 287 (1978). Gender is treated as a quasi-suspect classification that requires intensified, though not "strict," scrutiny. *Orr v. Orr*, 440 U.S. 268, 279, 99 S.Ct. 1102, 1111, 59 L.Ed.2d 306 (1979). And illegitimacy classifications receive a somewhat heightened form of rational basis scrutiny.

*Trimble v. Gordon*, 430 U.S. 762, 767, 97 S.Ct. 1459, 1463, 52 L.Ed.2d 31 (1977). None of these classifications is involved here.

**15.** The only fundamental right that appellants contend Arizona's scheme infringes is the right of interstate travel, which we have already concluded is not implicated here.

**16.** *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *McDonald v. Board of Election Commissioners*, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969).