Yosh SAKAMOTO, et al.,
Plaintiffs-Appellants,

v.

DUTY FREE SHOPPERS, LTD., et al.,
Defendants-Appellees.

No. 84–1587.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 1984.

Decided July 1, 1985.

William M. Fitzgerald, Saipan, CM, for plaintiffs-appellants.

Richard A. Pipes, Carbullido & Pipes, Agana, Guam, for defendants-appellees.

Hug, Circuit Judge, filed a concurring opinion.

Before HUG, TANG, and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge.

The plaintiffs are in the business of selling gifts to tourists in Guam. They brought this action challenging the legality of an exclusive concession agreement giving one of their competitors, Duty Free Shoppers, Ltd., exclusive rights to sell and deliver certain kinds of merchandise to departing passengers at the Guam Airport Terminal. The defendants in this suit are

the parties to the concession agreement: Duty Free, the Government of Guam, the Guam Airport Authority, and the Authority's executive manager.

The district court granted summary judgment for the defendants and dismissed the action. The plaintiffs' principal contentions on appeal are that the concession agreement burdens interstate and foreign commerce in violation of the Commerce Clause of the United States Constitution and violates the antitrust laws. We affirm.

The business of plaintiffs and Duty Free is primarily aimed at Japanese tourists in Guam who purchase gifts or "omiyage" to carry back to Japan. The exclusive concession practice in question here began in 1967, and the current contract was entered into in 1978 as the result of competitive bidding. Duty Free submitted the highest bid, $140 million, and was awarded the fifteen year concession which gave it the exclusive right to sell and deliver specified merchandise at the airport. Proceeds from the contract represent a major source of funding for the construction and maintenance of the airport terminal.

In their challenge to the contract as violative of the commerce clause, plaintiffs do not contest the right of the Government of Guam and the Airport Authority, its agency, to limit by contract the number of businesses permitted to make sales on the premises of the airport. Nor do plaintiffs contend that the contract directly interferes with their ability to sell to customers elsewhere. Plaintiffs complain about the limitation on their right to deliver goods at the airport. They contend that the exclusive contract with Duty Free, which prevents them from delivering previously purchased merchandise to departing passengers as they arrive at the airport, is an undue burden on interstate and foreign commerce.

■ The defendants' threshold response to this argument, and one with which we agree, is that the limitations which the commerce clause places upon the power of state governments to burden commerce do not apply to the Government of

Guam because Guam is not a state. The defendants correctly point out that these limitations on states, the "negative implications" of the commerce clause, flow from the commerce clause's grant of plenary authority over commerce to Congress. "[T]he states have not been deemed to have authority to impede substantially the free flow of commerce ... or to regulate those phases of the national commerce which, because of the need of national uniformity, demand that their regulation, if any, be prescribed by a single authority." *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 767, 65 S.Ct. 1515, 1519, 89 L.Ed. 1915 (1945) (footnote omitted). The historical role of the commerce clause has been confined to limiting regulatory and taxing action by states which may interfere with federal sovereignty. *See* L. Tribe, *American Constitutional Law* at 336 (1978), *quoted in Reeves, Inc. v. Stake*, 447 U.S. 429, 437, 100 S.Ct. 2271, 2277, 65 L.Ed.2d 244 (1980).

■ Since Guam is an unincorporated territory enjoying only such powers as may be delegated to it by the Congress in the Organic Act of Guam, 48 U.S.C. § 1421a, the Government of Guam is in essence an instrumentality of the federal government. *See United States v. Wheeler*, 435 U.S. 313, 320–21, 98 S.Ct. 1079, 1084–85, 55 L.Ed.2d 303 (1978). Plenary control by Congress over the Guamanian government is illustrated by the provision that Congress may annul any act of Guam's Legislature. 48 U.S.C. § 1423i. Defendants therefore conclude that the negative implications of the commerce clause, designed to preserve congressional authority, cannot limit the Guamanian government, which is a creation of Congress itself. *Wheeler*, 435 U.S. at 321, 98 S.Ct. at 1085, 55 L.Ed.2d 303.

While the reported decisions considering this or similar questions are few in number, they support defendants' position. In *Buscaglia v. Ballester*, 162 F.2d 805 (1st Cir.), *cert. denied*, 332 U.S. 816, 68 S.Ct. 154, 92 L.Ed. 393 (1947), the First Circuit held that the commerce clause did not re-

strict the unincorporated Territory of Puerto Rico because Congress had the power under the territories clause to limit territorial action "even to the extent of annuling local legislation." *Id.* at 807. *Cf. Sea Land Services, Inc. v. Municipality of San Juan*, 505 F.Supp. 533 (D.P.R.1980) (decided after Puerto Rico became a commonwealth and holding that although the commerce clause does not apply to Puerto Rico ex proprio vigore, its prohibitive effect is binding on the commonwealth through the territories clause).

In *United States v. Husband R. (Roach)*, 453 F.2d 1054 (5th Cir.1971), *cert. denied*, 406 U.S. 935, 92 S.Ct. 1785, 32 L.Ed.2d 136 (1972), the Fifth Circuit held that the Governor of the Canal Zone was not subject to the limitations imposed on a state legislative body by the commerce clause. *Id.* at 1059–60. The court reasoned that since Congress retains plenary power to regulate the territories, U.S. Const. art. IV, § 3, cl. 2, and to regulate interstate and foreign commerce, U.S. Const. art. I, § 8, cl. 3, the Governor of the Canal Zone as Congress's "delegate," is not subject to the commerce clause limitations. 453 F.2d at 1059–60. Scholarly commentary agrees that constitutional restrictions on the states' regulation of interstate commerce do not extend to unincorporated territories. Leibowitz, *United States Federalism: The States and the Territories*, 28 Am.U.L.Rev. 449 (1979); Leibowitz, *The Applicability of Federal Law to Guam*, 16 Va.J.Int'l.L. 21 (1975); Fuster, *The Origins of the Doctrine of Territorial Incorporation and Its Implications Regarding the Power of the Commonwealth of Puerto Rico to Regulate Interstate Commerce*, 43 Rev.Jur.U. P.R. 259 (1974).

Ninth Circuit precedent is not to the contrary. In *Anderson v. Mullaney*, 191 F.2d 123 (9th Cir.1951), *aff'd* 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952), we held that

while the limitation on state regulation of commerce through the commerce clause did not apply by its own force to the Territory of Alaska, the legislative power granted to the Territorial Legislature was such that the territory should be treated as if it were a state. Alaska at the time was an incorporated territory, well on its way to statehood, and all provisions of the United States Constitution applied. Act of August 24, 1912, ch. 387, § 3, 37 Stat. 512 (codified at 48 U.S.C.A. § 23 (1952)).

The distinction between incorporated territories which are thought of as future states, see *Granville-Smith v. Granville-Smith*, 349 U.S. 1, 5, 75 S.Ct. 553, 555–56, 99 L.Ed. 773 (1955) and unincorporated territories, to which only the "essentials" of the Constitution apply, is not new. It goes back to the 1901 series of Supreme Court decisions known as the insular cases: *Downes v. Bidwell*, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (1901); *Armstrong v. United States*, 182 U.S. 243, 21 S.Ct. 827, 45 L.Ed. 1086 (1901); *Dooley v. United States*, 182 U.S. 222, 21 S.Ct. 762, 45 L.Ed. 1074 (1901); *DeLima v. Bidwell*, 182 U.S. 1, 21 S.Ct. 743, 45 L.Ed. 1041 (1901); *see also Downes v. Bidwell*, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (White, J., concurring). History and the views of scholars and judges who have focused on the issue all support our conclusion that the limitations the commerce clause places on the powers of states to regulate commerce do not affect the government of the unincorporated Territory of Guam.

This court has never directly addressed the applicability of the commerce clause's negative implications to unincorporated territories like Guam. We have, however, in three cases, assumed without discussion that the commerce clause limits the government of Guam in the same manner that it limits the states.[1] *See Pacific Broadcast-*

---

1. The district court of Guam has reached inconsistent results on the question of commerce clause applicability. *Compare Ambros, Inc. v. Maddox*, 203 F.Supp. 934 (D.Guam 1962) (court refused to hold that Congress had not conferred upon Guam the power to impose burdens on

commerce by its approval of legislation implicit in its failure to annul, *with Duty Free Shoppers, Ltd. v. Tax Commissioner*, 464 F.Supp. 730 (D.Guam 1979) (because no language exists in the Guam Organic Act which indicates Congressional intent to suspend the commerce clause's opera-

*ing Corp. v. Riddell,* 427 F.2d 519 (9th Cir.1970) (gross receipts tax not violative of the commerce clause); *Asiatic Trans-Pacific, Inc. v. Maddox,* 371 F.2d 132 (9th Cir.1967) (gross receipts tax not violative of the commerce clause); *Manila Trading & Supply Co. v. Maddox,* 335 F.2d 150 (9th Cir.1964) (gross receipts tax violative of the commerce clause).

■ We do not view these cases as controlling precedent on the applicability of the commerce clause to Guam. In those cases, this court simply assumed that the commerce clause applied, but the issue was never raised or discussed. Such unstated assumptions on non-litigated issues are not precedential holdings binding future decisions. *See United States v. L.A. Tucker Truck Lines,* 344 U.S. 33, 37–38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952) (prior decision is not binding precedent on point neither raised by counsel nor discussed in the opinion of the court in that case); *Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Matter of Baker,* 693 F.2d 925, 925–26 (9th Cir.1982) (prior case found not to have established controlling precedent on issue before the court since the question at issue was neither contested nor ruled upon in that case); *Sethy v. Alameda County Water District,* 545 F.2d 1157, 1159–60 (9th Cir.1976) (en banc) (accord). We therefore agree with the district court's holding in this case that the commerce clause does not limit the Government of Guam as it limits the governments of the states. The agreement does not violate the commerce clause.

■ We turn next to the plaintiffs' antitrust claims. The district court dismissed the antitrust claims on several alternative grounds, but we need to reach only the question of immunity. Plaintiffs acknowl-

edge that acts of both state governments and federal instrumentalities are immune from antitrust liability. *See Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943); *Sea-Land Service, Inc. v. Alaska Railroad,* 659 F.2d 243, 244 (D.C.Cir. 1981), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982). Plaintiffs, however, try to fit this case within the line of Supreme Court cases holding that municipalities, unlike state governments and federal instrumentalities, are not immune unless acting pursuant to clearly articulated and affirmatively expressed state policy to displace competition. *See Town of Hallie v. City of Eau Claire,* —— U.S. ——, ——, 105 S.Ct. 1713, 1717, 85 L.Ed.2d 24 (1985); *Community Communications Co. v. City of Boulder,* 455 U.S. 40, 51, 102 S.Ct. 835, 840–41, 70 L.Ed.2d 810 (1982); *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 413, 98 S.Ct. 1123, 1137, 55 L.Ed.2d 364 (1978); *Lorrie's Travel & Tours, Inc. v. SFO Airporter, Inc.,* 753 F.2d 790, 792 (9th Cir.1985). Much of the force of these cases has been prospectively overruled with the enactment of the Local Government Antitrust Act of 1984, Pub.L. No. 98–544, 98 Stat. 2750 (1984), effective after this lawsuit was filed.

In *Community Communications Co.,* the Supreme Court held that the City of Boulder was not immune from antitrust liability in connection with its policy of limiting competition in cable television. The Court reasoned that the city, a "home rule" municipality with rights of self government superseding the laws of the state, was not entitled to the immunity enjoyed by the state. The grant of home rule was not a "clear articulation and affirmative expression" of state policy regarding cable television regulation. *Community Communications Co.,* 455 U.S. at 54–56, 102 S.Ct. at 842–43, 70 L.Ed.2d 810.

Guam's relationship to the federal government is different from Boulder's relationship to Colorado. As we have seen,

tion, the court concluded that Guam is bound by

the limitations imposed by the commerce clause).

the government of Guam is an instrumentality of the federal government over which the federal government exercises plenary control. Congress has granted it far fewer powers of self government than the State of Colorado has granted the City of Boulder. There is no reason why Guam should enjoy less immunity than the federal government itself. *See Jet Courier Services, Inc. v. Federal Reserve Bank of Atlanta,* 713 F.2d 1221, 1228 (6th Cir.1983); *Sea-Land Services, Inc.,* 659 F.2d at 246–47.

The only remaining contention which plaintiffs pursue on appeal is that because the contract permits delivery by only one company, the contract violates the equal protection clause. Because plaintiffs allege only economic discrimination, we need determine only whether the contract has a rational relation to legitimate state interests. *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 489, 97 S.Ct. 1898, 1908, 52 L.Ed.2d 513 (1977); *Benson v. Arizona State Board of Dental Examiners,* 673 F.2d 272, 277–78 (9th Cir.1982).

■ It is not disputed that the franchise agreement raises revenue for the airport, and revenue production is a legitimate state interest. *See San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 40–41, 93 S.Ct. 1278, 1300–01, 36 L.Ed.2d 16 (1973). Guam's interest in regulating traffic and security at the airport is also implicated. Plaintiffs claim that their deliveries will not in fact create serious traffic or security problems at the airport, but these claims, if true, do not serve to denigrate the legitimacy of the governmental interest in this regard.[2] The concession contract in this case does not deny equal protection.

Affirmed.

HUG, Circuit Judge, concurring:

I concur in the result reached by the majority opinion and with the discussion relative to the antitrust claims. However, I am not fully convinced that the commerce clause does not apply to the Territory of Guam under the authority of *Anderson v. Mullaney,* 191 F.2d 123 (9th Cir.1951), *aff'd* 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952). I find the distinction between the then Territory of Alaska and the Territory of Guam somewhat tenuous. However, I would not reach that issue because I would hold that the agreement in question places no burden on interstate commerce.

It is clear that the Airport Authority could grant to a concessionaire the exclusive right to sell merchandise in the airport after competitive bidding. No party disputes this. The plaintiffs maintain that the agreement does more than that; they claim that the agreement deprives them of a transportation facility essential to the shipment of their goods in interstate commerce. In my opinion, this is not the case. Plaintiffs can ship goods by air freight just as any other person can; nothing in the agreement deprives them of the use of the air carrier facility. What is denied to plaintiffs is the use of the airport to complete their sales transaction by delivering the merchandise to the passenger at the airport. The question is, thus, whether the commerce clause requires that the plaintiffs be allowed to use the airport to complete their sales transaction with the customer or whether the Airport Authority can require that delivery be made elsewhere. I would hold that the commerce clause does not prevent the Airport Authority from establishing this requirement. Goods delivered elsewhere to the passenger can be taken aboard by him and the plaintiffs are free to ship by air freight. There is no burden on interstate commerce, there is only a limitation on the use of the airport

**2.** Plaintiffs rely on *Park'N Fly of Texas, Inc. v. City of Houston,* 327 F.Supp. 910 (S.D.Tex.1971). There the court found that a Houston ordinance which permitted only a city "shuttle bus" concessionaire to use favorable positions for loading and unloading passengers from distant parking lots had no basis, "much less a reasonable one." *Id.* at 925. There, however, the distinction between the concessionaire and others with similar vehicles actually created traffic congestion and hindered the ability of the airport to serve its primary obligations to passengers.

as a facility to complete the sale by delivery.