# 18 U.S.C. § 207 and the Government of Guam

18 U.S.C. § 207(a)(1) prohibits a former Department of the Navy employee from representing the Government of Guam before the Federal Maritime Commission in a litigation in which he participated personally and substantially while employed by the Navy.

September 12, 1996

MEMORANDUM OPINION FOR THE DIRECTOR
OFFICE OF GOVERNMENT ETHICS

You have asked for our opinion whether 18 U.S.C. § 207(a)(1) bars a former employee from representing the Government of Guam in a litigation in which he participated personally and substantially while employed by the Department of the Navy. *See* Letter for Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from Stephen D. Potts, Director, Office of Government Ethics (June 25, 1996) ("Potts Letter"). We conclude that the statute forbids the representation. [1]

While an attorney with the Navy's Military Sealift Command ("MSC"), the former employee represented the MSC in a case before the Federal Maritime Commission ("FMC"), *Government of Guam v. Sea-Land Service, Inc.*, Docket No. 89–26. He has now joined the law firm representing the Government of Guam in the case. He wishes to appear on behalf of Guam before the FMC and in any subsequent judicial review proceedings.

Section 207(a)(1) provides:

> Any person who is an officer or employee . . . of the executive branch of the United States . . ., or of the District of Columbia, and who, after the termination of his or her service or employment with the United States or the District of Columbia, knowingly makes, with the intent to influence, any communication to or appearance before any officer or employee of any department, agency, court, or court-martial of the United States or the District of Columbia, on behalf of any other person (except the United States or the District of Columbia) in connection with a particular matter —
>
> (A) in which the United States . . . is a party or has a direct and substantial interest,

---

[1] Section 207(a)(1) covers a former employee's "communication to or appearance before" agencies and courts, made "with the intent to influence." Here, we use forms of the word "represent" as a shorthand, without meaning to specify the exact scope of the statute. There is no dispute in the present case that the former employee would be engaged in "communication[s]" and "appearance[s]" within the meaning of the law.

(B) in which the person participated personally and substantially as such officer or employee, and

(C) which involved a specific party or specific parties at the time of such participation,

shall be punished as provided in section 216 of this title.

Here, the former employee, while with the MSC, "participated personally and substantially" in the "particular matter" in question, which involves "specific parties." *See* Potts Letter at 2. The former employee, however, makes two basic arguments that the statute does not apply. First, he argues that Guam is not a "person" under § 207 and that his representation is, therefore, not "on behalf of any other person." *See* Memorandum for the Director, U.S. Office of Government Ethics, from Former Employee, *Re: Request for Advisory Opinion Concerning the Application of 18 U.S.C. § 207(a)(1)*, at 3 (Feb. 26, 1996). Second, he argues that his representation is not on behalf of a person "except the United States," because Guam is an instrumentality of the United States. *Id.* at 3–4. He maintains, in addition, that his representation would square with the policy of the statute because Guam and the MSC have no adverse interests in the FMC proceedings, and he urges the relevance of the principle that criminal statutes must be strictly construed. *Id.* at 4–5. These arguments are unpersuasive.

First, although Guam is not a "person" under some other statutes, *see, e.g., Ngiraingas v. Sanchez*, 495 U.S. 182 (1990) (Guam not a "person" under 42 U.S.C. § 1983), it is a "person" under § 207. That provision treats even the United States and the District of Columbia as persons; it applies to representation of "any other person (except the United States or the District of Columbia)." It also treats state and local governments as "persons": a one-year "cooling off" period for representation by former high-level officials of "persons other than the United States," 18 U.S.C. § 207(c), (d) & (e), is expressly made inapplicable to representation undertaken by employees of state and local governments, on behalf of those governments. *See id.* § 207(j)(2)(A). Representation of state or local governments by former federal employees, therefore, *could* violate § 207(a)(1), the provision at issue here. By providing exemptions for work on behalf of the United States, the District of Columbia, and (in some circumstances) state and local governments, and by restricting certain other work on behalf of state and local governments, the statute bespeaks an intent to cover units of government as "persons." *Cf. United States v. Smith*, 499 U.S. 160, 167 (1991) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980)) ("'Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.'"). Guam is therefore a "person" under § 207.

Second, although Guam is an "instrumentality of the federal government" for some purposes, *see Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1286, 1289 (9th Cir. 1985), *cert. denied*, 475 U.S. 1081 (1986) (Commerce Clause and antitrust laws), it is not the "United States" for purposes of § 207. It would be anomalous for Guam to be an instrumentality of the United States under a statute that even treats the United States and the District of Columbia as separate entities. Section 207(a)(1) applies to "any communication to or appearance before any officer or employee . . . of the United States or the District of Columbia, on behalf of any other person (except the United States or the District of Columbia)," and clarifies that former officials of the United States may communicate to or appear before officers and employees of the District of Columbia, and vice versa. 18 U.S.C. § 207(a)(3). Thus, the District of Columbia is not covered by the term "the United States" in § 207, and there is no apparent reason why an unincorporated territory with its own government, *see, e.g.*, 48 U.S.C. §§ 1421–1423, should receive different treatment.

Furthermore, § 207 is aimed, among other things, at preventing former employees of the United States from "switching sides" in particular matters involving specific parties, such as litigation. *See, e.g.*, 5 C.F.R. § 2637.101(c)(1) (1996).[2] Guam and the United States may now appear separately in litigation and take opposite sides. As Judge (now Justice) Kennedy explained, "the executive branch of the Government of Guam [before 1971] might have been deemed under the control of the United States" as to litigation, because the Governor was appointed by the President with the advice and consent of the Senate, but

> [o]nce the Governorship of Guam was made an elected office, the United States relinquished its control over the executive of the Government of Guam. The executive branch is responsible now to the people of Guam. That the Government of Guam is now capable of acting independently of the United States in deciding whether to sue the United States is evidenced by the institution of the present action.

*Government of Guam v. United States*, 744 F.2d 699, 701 (9th Cir. 1984). Given this possibility of conflict between the United States and Guam and given the statutory structure, we believe that Guam does not fall within the term "the United States" as used in § 207.

To be sure, there may be some instances where, even within the executive branch of the federal government, an employee who leaves one agency and joins

---

[2] The statute is also designed to restrict trading on past friendships and associations and prevent the unfair use of inside information. 5 C.F.R. § 2637.101(c)(2), Roswell B. Perkins, *The New Federal Conflict-of-Interest Law*, 76 Harv. L. Rev. 1113, 1121 (1963). (The regulation cited, 5 C.F.R. § 2637.101(c), applies only to persons who left the government before statutory amendments became effective on January 1, 1991, but the earlier regulations "remain []persuasive" to the extent the statute has not changed. Office of Government Ethics, Summary of Post-Employment Restrictions of 18 U.S.C. § 207, at 1 (Nov. 4, 1992).)

another might "switch sides" in some sense, and yet § 207 would not apply: "A prime example of this is the activities of the Federal Labor Relations Authority. It is basically an intra-governmental regulatory body whose employees sometimes come from other agencies having worked on pending matters before the FLRA or who may wish to leave [the] FLRA for an agency which has a matter pending at the FLRA in which they are officially involved." OGE Informal Opinion 86x1 (1986). We do not believe, however, that these instances are analogous to the present case. The employee who transfers from one executive agency to another remains under the control of the executive branch and subject to its ethics regulations. As the Office of Government Ethics has noted, "[t]he FLRA . . . has been very sensitive to these situations and has used its standards of conduct to provide guidance for its employees." *Id.* Congress has left these conflicts to be policed by regulations issued by agencies plainly within the United States government; it hardly follows that § 207 should be construed as inapplicable to an entity "capable of acting independently of the United States." *Government of Guam*, 744 F.2d at 701.

We may assume, as the former employee argues, that the United States and Guam do not have adverse interests in the action before the FMC and that there is no "reasonably probable scenario" for future adversity. *See* Memorandum from MSC Designated Agency Ethics Official, *Re: Government of the Territory of Guam et al. v. Sea-Land and APL, FMC Docket No. 89–26* (Feb. 23, 1996). But § 207 is a prophylactic statute that is "intended to prevent even the appearance of wrongdoing and that may apply to conduct that has caused no actual injury to the United States." *Crandon v. United States*, 494 U.S. 152, 164 (1990) (describing another conflict of interest law, 18 U.S.C. § 209). It creates a prohibition applicable to specified *types* of circumstances, as listed in the statute, where conflicts *may* arise. On its face, the language of § 207 draws no distinction between matters in which the interests of the person represented by the former employee coincide with the interests of the United States and those in which the interests diverge or are adverse. The statute reaches "*any* investigation, application, request for a ruling or determination, rulemaking, contract, controversy, claim, charge, accusation, arrest, or judicial or other proceeding." 18 U.S.C. § 207(i)(3) (emphasis added). Thus, "[a] former employee does not act on behalf of the United States . . . merely because the United States may share the same objective as the person whom the former employee is representing." Office of Government Ethics, *Summary of Post-Employment Restrictions of 18 U.S.C. § 207*, at 4 (Nov. 4, 1992).

Although (under an earlier version of § 207) we found that a former employee would not be an agent of another person with regard to a contract unless there was "an ingredient of at least inchoate adversariness," *Former Officers and Employees—Conflict of Interest (18 U.S.C. § 207)—Contract—Disqualification Connected with Former Duties or Official Responsibilities*, 2 Op. O.L.C. 313,

316 (1978), the justification for this conclusion was that "[a]side from a contract, the other listed matters [in the definition of 'particular matter'] appear to be pregnant with at least some adversariness (in the sense of urging a point of view) in all their aspects," *id. See also* OGE Informal Opinion 80x4 (1980); 5 C.F.R. § 2637.201(b)(5) (1996). With regard to litigation in which the United States is a party or has a direct and substantial interest and in which a former employee represents a participant in the case, it is irrelevant whether the former employee will be advancing a position aligned with the government's:

> An attorney participated in preparing the Government's antitrust action against Z Company. After leaving the Government, she may not represent Z Company in a private antitrust action brought against it by X Company on the same facts involved in the Government action. *Nor may she represent X Company in that matter.*

5 C.F.R. § 2637.201(c)(5), Ex. 1 (emphasis added). That the interests of the United States and Guam are aligned in the present case does not alter our conclusion about the applicability of § 207. [3]

RICHARD L. SHIFFRIN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[3] The former employee also relies on the rule of lenity, under which " 'when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.' " *United States v. Bass,* 404 U.S. 336, 347 (1971) (quoting *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–22 (1952)). There may be some doubt how that rule applies to prospective ethics advice, where the "need for fair warning" underlying the rule is met by the advice itself. *See United States v. R.L.C.,* 503 U.S. 291, 306 n.6 (1992) (plurality opinion); *Liparota v. United States,* 471 U.S. 419, 427 (1985); *but see R.L.C.,* 503 U.S. at 309 (Scalia, J., concurring in part and concurring in the judgment) (rule of lenity also "assur[es] that the society, through its representatives, has genuinely called for the punishment to be meted out"). In any event, we believe that § 207(a) is unambiguous in its application here and so do not resort to the rule of lenity for guidance. *See Lewis v. United States,* 445 U.S. 55, 65 (1980) (the "touchstone" of the rule of lenity "is statutory ambiguity").